SARAH P. TOWNSEND ET AL., APPEAL FROM BOARD OF STREET COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A duly recorded warranty deed in the usual form, after describing the land conveyed (which was bounded on three sides by city streets, *F*, *I* and *L*), provided that upon two sides of the tract, *F* and *I*, "the building lines are to be forty feet from the line of the street." *Held* that this provision, construed in the light of the facts found, constituted a building restriction obligatory not only upon the original grantee but also upon subsequent purchasers of portions of the track which abutted on the streets named; and therefore an award of damages to the owner of one of these portions or lots, on account of the establishment by the city of a fifteen foot building line on his land, could not be supported.
Whether damages might have been assessed upon the ground that the restriction by deed could be removed at the will of the parties, while the line established by the city was practically permanent, *quœre*.

[Argued October 9th—decided December 1st, 1896.]

APPEAL from the assessment of damages and benefits caused by the establishment of a street building line in the city of Hartford, taken to *Hon. David S. Calhoun*, judge of the Court of Common Pleas for Hartford County, by whom the case was referred to *Lewis Sperry, Esqr.*, a committee to hear and report the facts; the judge accepted the report of the committee, which confirmed the assessment made by the city, and dismissed the appeal, and the appellants appealed

for alleged errors in the rulings and judgment of the judge. *Error, judgment reversed and cause remanded for action in accordance with the opinion.*

The case is fully stated in the opinion.

*John W. Coogan,* for the appellant.

The owner of property in fee has the right to dispose of his estate either absolutely or by qualified grant, and regulate the manner in which it shall be used, by such restrictions as he pleases, provided these are not against public policy and create no unlawful restraint of trade. *Whitney* v. *Union Ry. Co.,* 11 Gray, 363. And in determining the character of such restriction,—whether it is merely personal to the grantee or follows the land into whatever hands it may ultimately come,—reference must always be had in a doubtful case to the intention of the parties as shown by the conditions surrounding the property, and the circumstances surrounding the transaction. This court has adopted this rule in at least two late cases—*Chappell* v. *R. R. Co.,* 62 Conn. 195, and *Russell* v. *Heublein,* 66 id. 486. If we apply the test to this case, it soon disposes of the question of intent, for it is inconceivable that Hooker and Gillette intended to confine this restriction solely to their own immediate grantee. *Parker* v. *Nightingale,* 6 Allen, 341; *Schwoerer* v. *Boylston Market Asso.* 99 Mass. 297; *Dennis* v. *Wilson,* 107 id. 592; *Peck* v. *Conway,* 119 id. 548; *Underwood* v. *Carney,* 1 Cush. 288; *Linzee* v. *Mixer,* 101 Mass. 530; *Sanborn* v. *Rice,* 129 id. 396; *Tobey* v. *Moore,* 130 id. 450. A covenant in a conveyance of city lots, that any house which might be erected thereon should be set back a certain distance from the line of the street on which said lots fronted, runs with the land and binds not only the covenantors, but all who derive title through their deed. *Winfield* v. *Henning,* 21 N. J. Eq. 188. While the city undoubtedly has the power to establish building lines, it cannot set aside previous restrictions obligatory upon the landowner. And if the landowner cannot build within 40 feet of the street line by reason of a private agreement not to do so, how can he be damaged by the city's 15

foot line? How is the original limitation upon his title affected?

*William Waldo Hyde* and *William J. McConville*, for the appellee.

There is no perpetual incumbrance or limitation on Mr. Redfield's land by reason of the language used in the Gillette and Hooker deed to Samuel Woodruff. The language relied on is as follows : " The building lines are to be as follows: On Farmington Avenue forty feet, on Imlay Street forty feet, and on Laurel Street twenty feet, in each case from the line of the street." No words of condition, reservation, or exception are used. The deed contains a covenant that the premises are free from all incumbrances except two mortgages. Clearly there is nothing here characteristic of a reservation, exception, or contract as to building lines. It is well settled that if it is intended to establish a reservation in a deed, the word " heirs" must be used. 3. Wash. on Real Prop. 377 ; *Curtis* v. *Gardner*, 13 Met. 461 ; *Chappell* v. *N. Y., N. H. & H. R. R.*, 62 Conn. 203 ; *Russell* v. *Heublein*, 66 id. 486. No attempt was ever made to enforce the claimed restriction until twenty-two years had elapsed after Gillette and Hooker had made their deed to Woodruff, and eleven years after Redfield bought his property. To enforce such a claim under the circumstances, after such a lapse of time, would be most oppressive. It has been held in Illinois (*Brown* v. *Paine*, 27 Chicago Legal News, 374), that a covenant in a deed fixing a building line will not be enforced against a subsequent purchaser, when the character of the locality has so changed as to constitute it an oppression. *Jackson* v. *Stevenson*, 156 Mass. 496, 502. See also *Dana* v. *Wentworth*, 111 Mass. 291 ; *Hopkins* v. *Smith*, 162 id. 444; *Hans* v. *Biglow*, 155 id. 341. These cases hold that there must be clear words of restriction in the use of the land ; this restriction must clearly appear to have been intended for the benefit of all subsequent purchasers of the same tract, and there should be a clear assignment from the original grantor of his rights under such restriction, to enable one

subsequent grantee to maintain an action against another grantee. In the absence of these facts, the law is clear that one subsequent grantee has no right to maintain an action at law or in equity against another subsequent grantee on account of the breach of the restriction in the original deed. *Schreiber* v. *Creed*, 10 Sim. 9; *Keates* v. *Lyon*, L. R. 4 Ch. App. 218; *Renals* v. *Cowlishaw*, L. R. 11 Ch. Div. 866; *Sharp* v. *Ropes*, 110 Mass. 381; *Graham* v. *Hite*, (Ky.) 20 So. W. Rep. 506. The claimed incumbrance set up by the appellants is not permanent, but may be released at any time. Its enforcement or release is a matter with which the city of Hartford has nothing to do. The city of Hartford takes away a certain right, which is assessed at a certain sum. It can make no difference as to that award whether other parties have a contract with Mr. Redfield as to building, which they can enforce or not. The court will doubtless pass on the rights of these parties in a proper action. What those rights may be, if any there are, is of no importance in this hearing.

TORRANCE, J. This is an appeal from the action of the judge of the Court of Common Pleas of Hartford county, in dismissing an appeal taken to him from an assessment of damages and benefits made by the board of street commissioners of the city of Hartford, consequent upon the establishment of a building line. The case was tried to a committee who made a written finding and report to said judge, which report was by him accepted and the appeal dismissed.

The important question in the case relates to the construction and effect of a certain deed of land made by Francis Gillette and John Hooker to Samuel Woodruff in 1868, and the facts bearing upon that question as they appear of record may be stated as follows:—

On the 1st of September, 1868, Hooker and Gillette, by a warranty deed of that date, in the usual form, conveyed to Samuel Woodruff certain land in Hartford, and the descriptive part of said deed reads as follows: "A piece of land lying in said town of Hartford, and in the western part of

the city of Hartford, bounded north on Farmington Avenue, east on Imlay Street, south on land of John R. Keep, and land of the grantors, and west on Laurel Street; being four hundred feet (400) on said Avenue, four hundred feet (400) on Imlay Street, and four hundred feet (400) on Laurel Street, the rear lines running each to the middle at right angles, to said side streets; said Imlay and Laurel Streets being parallel and exactly four hundred feet (400) apart. The building lines are to be as follows: On Farmington Avenue 40 feet, on Imlay Street 40 feet, and on Laurel Street 20 feet, in each case from the line of the street." This deed contained the usual *habendum* and warranty clause, "and no reference is made to said building line, either in the *habendum* clause or warranty clause, and said property is in said deed warranted free of all encumbrance, except two mortgages therein mentioned." Two days later, September 3d, 1868, Woodruff reconveyed by warranty deed said land to Gillette and Hooker by way of mortgage, "and no mention was made in said mortgage deed of said proposed building line." In March, 1874, Gillette and Hooker by a quitclaim deed in the ordinary form made to one Pierce, released a part of the land described in their deed to Woodruff, from the mortgage given to them by Woodruff, and from a subsequent mortgage to them covering said part released, and in said deed to Pierce appears the following: "It being intended hereby to release all our interests in said land derived from said mortgages, but in no manner to release the condition of our original deed to the said Samuel Woodruff with regard to building lines on said streets, or any other condition whatever of said deed." All these deeds were duly recorded within a short time after their respective dates. After the land was conveyed to Woodruff as aforesaid in 1868, and up to the time this case was tried to the committee, there had been various deeds given of portions of the original plot of land described in said deed to Woodruff, but there was no reference to said building line in any of said deeds, except as above stated.

On the trial before the committee no evidence was offered

"intended to extend or enlarge the language of the deeds above quoted, or to explain the intent of the parties to those deeds. It appeared in evidence, however, that all parties who had built houses on the west side of Imlay Street had located such houses forty feet west from the west line of said street," and this is found to be true.

In 1891 the city of Hartford established a building line over the tract of land so conveyed to Woodruff, on the west side of Imlay Street, as follows : " Commencing at a point in the south line of Farmington Avenue fifteen feet west of the west line of Imlay Street, thence running southerly one hundred and fifty feet in a straight line fifteen feet distant from and parallel to said west line of Imlay Street, thence westerly at right angles twenty-five feet, thence southerly to Hawthorne Street forty feet distant from and parallel to the west line of Imlay Street." The report of the committee states that " the line so established is located on the land of the several appellants, forty feet west of the west line of Imlay Street, with the exception of the land of John R. Redfield. The land of said Redfield consists of a vacant lot situated on the southwest corner of Farmington Avenue and Imlay Street, is fifty feet wide, front and rear, and two hundred feet deep. On this lot the line is located fifteen feet west of the west line of Imlay Street for the distance of one hundred and fifty feet from Farmington Avenue, and for the remaining fifty feet said line is located forty feet west of the west line of Imlay Street." The land of Sarah P. Townsend, one of the appellants in the appeal to the judge of the Court of Common Pleas, has since said appeal been sold to, and was at the time of the hearing of said appeal owned by Julia Smith Reilly, who became a party to said appeal. This land adjoins the land of Redfield on the south "and is improved by a dwelling-house fronting on Imlay Street, which is located about forty feet west of the west line of Imlay Street." The land of Mary J. Moseley, another of said appellants, lies next southerly of and adjoins the land of Miss Reilly, "and is improved by a dwelling-house fronting on Imlay Street, and located about forty feet west of the west line

of Imlay Street." It is found that but for the establishment by the city authorities of said building line on the Redfield land, it would be possible for the owner of that land to erect barns or other objectionable buildings in the rear of the lot in close proximity to the dwelling-house on the Reilly land, which would be a serious injury to the Reilly land, and also, though in a less degree, to the Moseley land. At the date of the assessment complained of, Sarah P. Townsend, Mary J. Moseley, Sarah A. Curtiss, The Mechanics Savings Bank, and John R. Redfield, "owned, respectively, parts of the land embraced in the said deed of Francis Gillette and John Hooker to Samuel Woodruff, of September 1st, 1868, and together, all of the land so conveyed to said Woodruff which bounded on Imlay Street and extended not less than fifty feet west from said Street."

The board of street commissioners awarded to Redfield as damages for the establishment by the city authorities of said building line upon his land, the sum of two thousand dollars, and assessed no benefits against him. For the same work it assessed benefits to Sarah P. Townsend, Mary J. Moseley, Sarah A. Curtiss, and The Mechanics Savings Bank, and to other landowners on Imlay Street, to the amount of the damages assessed.

Before the committee, and also before the judge upon the remonstrance, the appellants claimed in substance, that upon these facts the deed from Gillette and Hooker to Woodruff, "established the perpetual incumbrance of a building line on the Redfield property, forty feet west from Imlay Street;" and that the establishment of the building line by the city authorities in 1891 did not entitle Redfield to any damages, nor warrant the board of street commissioners in assessing benefits against the appellants. The committee found as follows upon this claim: "Your committee finds, as a conclusion of law, that the language above quoted is not competent, either as a reservation or exception to the grant, to establish a building line on the property of said Redfield, and that the establishment of said line by the Common Council entitled said Redfield to his reasonable damages for

that incumbrance. . . . Your committee further reports that if your Honor should find, as a conclusion of law, that the language used in the two deeds above quoted is competent in itself to establish a perpetual limitation on the use of the land of John R. Redfield, in question, which could not be removed by the original grantors or their privies, then said John R. Redfield is not entitled to any damages for the establishment of said building line by the Court of Common Council, as above described." The judge overruled the remonstrance and, as before stated, accepted the report and dismissed the appeal.

The reasons of appeal are five in number, but the fifth was abandoned orally in the argument before this court, and the other four really present but two questions in substance, namely : (1) Did the judge err in holding that the Woodruff deed did not establish a perpetual incumbrance or limitation upon the use of the Redfield land. (2) Did he err in holding that Redfield was entitled to damages for the establishment of the building line by the Common Council.

The principal question then, presented by this appeal, is whether Redfield as the owner of part of the Woodruff land on Imlay Street, was, at the time when the city authorities established the building line in 1891, bound by the restriction as to building, contained in the deed to Woodruff. If he was, we think it follows that he was not damaged by the establishment of that line, and we are of opinion that he was so bound.

To begin with, it seems quite clear that the deed in question, at least as against Woodruff, imposed a restriction upon the use of the land conveyed, and that it was intended by the parties to be a perpetual restriction. Gillette and Hooker being the owners in fee of the land, had the right to sell and convey it subject to such reservations and restrictions as to its future use and enjoyment, as they saw fit to impose, provided such restraints were not contrary to law or public policy; and Woodruff was at liberty to purchase on such terms as he saw fit. Acting upon their rights in this respect, the grantors put into the descriptive part of the deed an

explicit provision, in effect prohibiting the use of the land within forty feet of the street for certain purposes, and Woodruff accepted the deed with that provision in it. This provision was inserted, either for the benefit of the adjoining and abutting land of the grantors, or for some purpose or reason not disclosed by the deed nor found by the committee; the fair inference however, in the absence of evidence to the contrary, would seem to be that it was inserted, in part at least, for the benefit of the adjoining and abutting land of the grantors. But be this as it may, the effect of the provision was to limit in a certain way the estate conveyed; for the grantors did not part with, nor did the grantee acquire, the full, absolute and unqualified dominion over the land conveyed; on the contrary it was a part of the title conveyed to and accepted by Woodruff, that the use of the land should be limited in the way specified in the deed. By this deed what the grantee was " to have and to hold " to him, " his heirs and assigns forever, to his and their own proper use and behoof," was " the above granted and bargained premises "; that is, it was the land subject to the restriction upon its use. The restriction may thus properly be regarded, not as imposing a negative easement or a technical incumbrance upon the property conveyed, but as a retention by the vendors of a portion of the rights of ownership, and as an acceptance by the grantee of an estate limited to the extent of the rights retained. The parties apparently looked at the matter in this way, for the deed though evidently drawn by a careful lawyer, does not speak of, nor treat, the restriction as a technical incumbrance, and so no reference is made to it in the *habendum* or covenants, and the " estate " described in the " premises " is warranted to be free of all incumbrances, except the mortgages.

Looking then at the purpose, so far as it can be known, for which this provision was inserted, at the place of the provision in the deed, at the nature of the restriction, and at the language of the provision read in connection with the other parts of the deed, we are of opinion that the restriction set forth in the deed was intended by the parties to be a perpet-

ual one. In this view of the case Woodruff certainly was bound to observe the restriction, and he could convey to his grantees of this land no greater rights in it than he himself had. It follows also that Redfield, as the owner of part of the Woodruff land on Imlay Street at the time the building line of 1891 was established, was also bound to observe this restriction; for though nothing was said about it in the deed of conveyance to him, he and his grantor derive title under the recorded Woodruff deed, and had constructive notice of its provisions and are conclusively held to have known them; *Ensign* v. *Batterson*, 68 Conn. 298; *Peck* v. *Conway*, 119 Mass. 546; and under these circumstances Redfield acquired no greater rights in the land as against the grantors, or their privies, than Woodruff had.

In this aspect of the case it is immaterial whether one or more of the owners of the Woodruff land could, at law or in equity, enforce this restriction as against Redfield; it is enough that the grantors in the Woodruff deed, or their heirs, assigns, or devisees, can do so when necessary, as it is manifest they can, for no claim is made that the restriction has been removed, or the right to enforce it in any way lost, released, waived or abandoned. At the very time then, when the city authorities laid out the building line in 1891 over Redfield's land, he as owner of said land was bound not to build within forty feet of Imlay Street. If this be so, it is not, and cannot be, seriously claimed that Redfield was damaged to the extent of $2,000 by the establishment of the building line of 1891.

The right and power of the city authorities to establish this building line over Redfield's land, under the circumstances, is not involved in this case and need not be discussed; the only question here being as to the right and power to assess damages to him therefor; but it may be safely said that the action of the city authorities, in establishing this building line on Redfield's land, did not and could not affect the restriction imposed upon him as such landowner, by the Woodruff deed. The claim made before the committee and before the judge, in behalf of the right to assess damages to

Redfield, seems to have been based chiefly on the supposition that he was not bound by the restriction in the Woodruff deed; and as we hold that this supposition was not correct, the foundation of the claim fails.

Upon the argument before this court another ground in support of the claimed right to assess damages was advanced. Assuming that a restriction existed, binding upon Redfield and which the grantors in the Woodruff deed and their privies could enforce, it was said that inasmuch as that restriction could be removed at any time at the pleasure of the parties, and the line fixed by the city authorities could not be thus removed by the parties at pleasure, damages might arise from the establishment of that line which ought to be assessed in his favor.

It is not necessary upon this appeal to decide the questions involved in this claim, for it is manifest that the assessment complained of was not made upon this view of the matter. It was made—and the finding and conclusions of the committee and the decision of the judge proceed—mainly upon the supposition or assumption that Redfield was not bound by the restriction in the Woodruff deed; and we think the report of the committee must be regarded as finding, substantially, that if he was so bound, no damages were caused to him by reason of the mere establishment of this line by the city authorities.

For the reasons given there was error in the decision complained of, and it is reversed and the cause is remanded to the judge who rendered said decision, to be proceeded with according to law in conformity with this opinion.

In this opinion the other judges concurred.