## CHARLES E. ZINN et al. v. BALTHAZAR SIDLER et al., Appellants.

### Division Two, July 18, 1916.

1. **BUILDING LINE: Restrictions: Must Be by Covenant.** To sustain the suit of other lot owners in the block to restrain the owner of a lot from buiding on a strip of ground between the street and what is designated on a plat as "building line," a covenant as to the restricted use is necessary. The creation of such a covenant may be by express words, or by reasonable implication from words employed clearly indicative of such a purpose.

2. ———: ———: **Designation on Plat.** The mere designation of certain lines on the recorded plat of an addition as "building line," is not a restriction upon the use of the strip outside the line for building purposes.

3. ———: ———: **Reference to Plat in Deed.** And a reference to the plat in that part of the dedicator's deed describing the land, is to be held to be a matter of description, and not a restriction upon use.

4. ———: ———: **Recognized by Deeds of Others.** A reference to the building line in the conveyance of a particular lot, made by a later grantee of the dedicator, is simply a recognition of the restricted use of that lot, but is not a restriction upon the other lots of the addition embraced in the plat.

5. ———: ———: **Plat as Part of Subsequent Deeds.** The rule that a plat of land, shown to be correct and recorded, becomes a part of subsequent deeds, has reference, unless other limitations are mentioned in it, to descriptions; and a mere line drawn upon it, without more, will not suffice to create a covenant as to use.

6. ———: ———: **Effect of Covenant.** A restrictive covenant upon use of land affects the fee, and is not favored in the law, and must be expressed in words which give formal expression to the covenantor's purpose; if not by his plat, then either by words definitely defining the covenant, or by words making apt reference to a designated line defining the extent of the use.

7. ———: ———: **Kinds and Character of Covenant.** To create a restriction upon the use of a lot for building purposes, a covenant must be created, and it is immaterial whether it be

termed an equitable easement, or a servitude or a restrictive covenant; if express, it must be in words; if implied, the implication from the words used must be such as will clearly authorize the inference or imputation in law of the creation of the covenant.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

REVERSED AND REMANDED (*with directions*).

*Cook & Gossett, Beardsley & Beardsley* and *Stubenrauch & Hartz* for appellants.

(1) The mere designation upon the plat of a subdivision of land, or addition, whether within or without a city, of a plain line or lines, and writing on the plat near or along such line or lines the words "Building Line" is too indefinite and indeterminate, and is not a sufficient expression of a positive and perpetual restriction upon the use of the land to be binding as a restriction of the ordinary and usual exercise of ownership and enjoyment of land. Claims of restriction upon the right to ordinary enjoyment of property should be unfavorably and strictly construed. Kitchen v. Hawley, 150 Mo. App. 497; Scharer v. Pantler, 127 Mo. App. 432; Oil Co. v. La Tourette, 19 Okla. 92; McMurtry v. Phillips, 103 Ky. 308; Minister v. Madison Amus. Co., 214 N. Y. 267; Van Duyn v. H. S. Chase & Co., 149 Iowa, 222; Jones v. Williams, 56 Wash. 588; Johnson v. Shelter Island Assn., 122 N. Y. 330. (2) If the platter had so intended to positively restrict, he should and naturally would have said so expressly. King v. Trust Co., 226 Mo. 357. Or the platter may have made his plat as he did intending to put restrictions in his deeds, to make the building line binding as a restriction for some reasonable time and in some

reasonable manner, and then abandoned such idea and immediately sold the lots as free and clear of all incumbrances, claims, ·servitudes, etc. Duncan v. Railroad, 85 Ky. 525; Brown v. Wrightman, 90 Pac. 467; Sec. 2793, R. S. 1909. (3) If a building restriction in the nature of a plan of improvement is disregarded, or suffered to be disregarded, to a substantial extent by the grantor, originator of the same, or those thereafter claiming under him, it is an abandonment of, or such inconsistency concerning the same, that owners of other lands are not bound by such restriction. Improvement Co. v. Towers, 158 Mo. 282; Towers v. Compton Hill Co., 192 Mo. 379; Thompson v. Langan, 172 Mo. App. 64; Hawes v. Favor, 161 Ill. 440; Duncan v. Railroad, 85 Ky. 525; Brown v. Wrightman, 90 Pac. 467.

*Smart & Strother, Fyke & Snider* and *E. E. Steele* for respondents.

(1) The plat of McKinney Heights was recorded in 1886, and vested in the City of Kansas (now Kansas City), the fee of the streets and alleys thereon shown and dedicated to public use. R. S. 1879, secs. 6569-6575; Cameron v. Stephenson, 69 Mo. 372. By the extension of the city limits in 1897, McKinney Heights became a part of Kansas City. Kansas City Charter 1898, sec. 2, art. 1; 1 R. S. 1889, sec. 1880, as amended by Laws 1895, 54; R. S. 1909, sec. 9743. (2) The deeds, under which appellants claim title to their land, describe it by lot and block number on the plat of McKinney Heights. The plat itself, therefore, with all its notes, lines, descriptions and land marks is as much a part of such deeds as if it had been set out in the face of the deeds themselves. Whitehead v. Ragan, 106 Mo. 234; St. Louis v. Mo. Pac. Ry. Co., 114 Mo. 21; Campbell v. Wood, 116 Mo. 201; Whitehead

v. Atchison, 136 Mo. 495; Caruthersville v. Huffman, 262 Mo. 375; Lindsay v. Smith, 178 Mo. App. 189; Simpson v. Mikkelsen, 196 Ill. 575; Smith v. Young, 160 Ill. 163. (3) The "building line," marked as such on the plat of McKinney Heights, with its distance from the adjacent streets plainly indicated in feet in the same manner as all other distances shown on the plat, is perfectly plain and unambiguous in meaning and is a restriction upon the manner of use and improvement of the lots shown on the plat. Simpson v. Mikkelsen, 196 Ill. 575; King v. Trust Co., 226 Mo. 351; Yeomans v. Herrick, 178 Mo. App. 274; Tallmadge v. Bank, 26 N. Y. 105. (4) The restriction, although unlimited as to time, does not create a perpetuity, but on the contrary is a valid restriction which equity will enforce at the suit of any party entitled to the benefit of it. Stevens v. Realty Co., 173 Mo. 511; Noel v. Hill, 158 Mo. App. 444; Tobey v. Moore, 130 Mass. 448. (5) The appellants having erected their building in violation of the building line, pending the suit, the mandatory injunction requiring the removal of such part of it as violated the restriction was proper. Meriwether v. Joy, 85 Mo. App. 634; Fete v. Foerstel, 159 Mo. App. 75.

WALKER, J.—This is a suit in equity brought in the circuit court of Jackson County at Kansas City to enjoin defendants from erecting a building on a lot in McKinney Heights in said city.

A restraining order was granted and later dissolved. After its dissolution and before the trial, defendants erected a building on said lot. In September, 1912, a trial was had resulting in a judgment for plaintiffs, requiring defendants, within ninety days thereafter, to remove so much of said building as projected over the building line on the

lot, and restraining defendants from erecting or maintaining a building on the lot nearer the adjacent streets than twenty feet in one instance and fifteen feet in the other—the lot being on a corner. Jurisdiction to make further orders was retained to enforce compliance with the judgment then rendered. From this judgment the defendants have appealed.

In June, 1886, Marshall P. Wright owned a tract of land of thirty-one acres adjacent to the corporate limits of Kansas City. He laid it out in lots and blocks and streets and alleys, dedicating the latter to public use, acknowledged the plat and recorded the same, as required by the statute, designating the addition as "McKinney Heights." In 1897 it was made a part of Kansas City.

Across the lots and blocks on this plat, twenty feet from the street lines and parallel thereto—except along St. John Avenue, where the distance is fifteen feet—checked or broken lines were drawn designated as "building lines." Defendants' lot, described as "lot 14 of block 4, McKinney Heights," against which this particular proceeding is directed, is situated on the northwest corner of Jackson and St. John Avenues, the former running north and south and the latter east and west. The lot has a frontage of fifty feet on St. John Avenue.

Plaintiffs' lots are in the same block as that of defendants, also fronting on St. John Avenue. Plaintiffs contend that the lines on this plat marked "building lines" are restrictions upon all persons erecting buildings upon any of these lots, and that the action of the defendants in violating same is to plaintiffs' damage and injury in that it tends to depreciate the value of their property and interferes with the uniformity of the location of buildings on said tract or addition, which was in-

tended, and is principally used, for residential purposes.

Defendants, in opposition to this plea, contend that at the time this plat was made and recorded the land platted was outside of the corporate limits of Kansas City and the building lines marked thereon were in no wise mentioned except by marking them on the plat; that neither the acknowledgment to the plat nor any deed conveying the lots therein designated has any reference to same, and that these lines constitute merely a suggestion to owners of property in said addition and have no binding force or effect as a restriction; that they acquired possession of the lot against which this proceeding is directed without any knowledge of the pretended claims or demands of plaintiffs that there was a building line restriction on the property, and that they purchased the same believing it to be unrestricted and unincumbered in any manner; that the enforcement of the restriction would constitute a taking of their property without due process of law. The reply admitted that McKinney Heights when platted was not in the corporate limits of any city or town and that the defendants' title was through mesne conveyances under Wright, who platted the property, but denied all the other allegations in the answer.

In July, 1886, soon after recording the plat, Marshall P. Wright and wife conveyed the entire addition to William McKinney, describing it as follows: "All lots in McKinney Heights, being originally the L. P. Browne tract, consisting of thirty-one acres in the east end of the south half of the northeast quarter of section 34, township 50, range 33, Jackson County, Missouri. The plat of said McKinney Heights being recorded in book B, page ——, June 17, 1886, to which further reference is hereby made."

January 20, 1887, William McKinney and wife conveyed the addition to Thomas A. Harris, describing it as follows: "All of McKinney Heights [except certain blocks therein named] as the same is marked and designated on plat 5 in the office of the recorder of deeds for the county of Jackson, State of Missouri."

January 28, 1887, Thomas A. Harris and wife conveyed the addition to Calvert R. Hunt, describing it as follows: "All of McKinney Heights, an addition to the City of Kansas, as the same is marked and designated on the plat filed in the office of the recorder of deeds for the county of Jackson, State of Missouri [except certain lots therein named]." At different times subsequent to the conveyance to Hunt deeds were made to different persons to lots in this addition.

McKinney Heights was a residence district before the erection of the building by defendants, and at the time of the trial there were 95 buildings on the addition, including that of defendants, 82 of which conformed to the building lines, the remaining 13 having been built in disregard of same. There was testimony in detail as to the conditions under which the different buildings were erected so far as concerned the builders' knowledge and observance of the building lines, tending to show, in the majority of cases, that when notified of the restriction parties complied with same. It was also shown that plaintiffs in no case expressly acquiesced in any violations of the restriction, but when notified protested against same.

A covenant as to the restricted use of the property in question is necessary to sustain the plaintiffs' contention; the creation of of such a covenant may be , by express words or by reasonable implication from

Restrictions on Use of Land.

words employed clearly indicative of such a purpose.

The owner, Wright, who subdivided the property and recorded a plat of same, may have had such a purpose in contemplation in designating certain lines on the plat as building lines; but this purpose was never consummated. Aside from the absence from the plat of any other reference to this proposed restriction, there is nothing in the conveyance made by him of the entire tract to indicate such a purpose. It is true the description of the property contains a reference to same as subdivided, adding, as regards the plat, "to which further reference is hereby made." The two subsequent transfers of the entire addition are no more definite and the later transfers of particular lots, except in one instance, bear no reference to any restricted use. The excepted instance referred to is not determinative of the matter at issue; it is simply a recognition in one of the transfers of a single lot of the existence of a restriction. At best the references in these deeds to the plat are matters of description, and if otherwise intended, at least some definite indication of the grantor's purpose should appear, especially in the conveyance made by Wright in the first transfer of the entire property after its subdivision.

As a general proposition a plat of land shown to be correct and properly recorded becomes a part of subsequent deeds to same. [Lindsay v. Smith, 178 Mo. App. 1. c. 193.] This ruling, however, has reference, unless there are other limitations, to the location or description of the property (Ferguson v. Dent, 8 Mo. 667; Dryden v. Holmes, 9 Mo. 134), and so far as our investigation has led us, a mere. designated line drawn upon a map or plat of property, without more, will not suffice to create a covenant.

It has often been held that in construing plats "effect must be given to the plain meaning and intent they exhibit by their outlines as well as by their words," as in Caruthersville v. Huffman, 262 Mo. l. c. 375; Whitehead v. Atchison, 136 Mo. l. c. 495; and St. Louis v. Railroad, 114 Mo. l. c. 22. These cases and others of like character in the application of the rule have reference to the subdivision of property into lots and blocks and streets and alleys in which the subdivision becomes fixed upon the filing of the plat in the recorder's office—the block and lot lines being designated as a measure of convenience and necessity and the street and alley lines as defining portions of the tract dedicated by the owner to the public. [Sec. 10290 et seq., R. S. 1909.] These are essentials of every plat; they exist as a necessary part of it and no transfer can be made of the property therein without express reference to such subdivisions.

A covenant, however, is not a necessary part of a plat but is dependent for its creation on the will of the owner of the property subdivided. That will cannot, by reason of the very nature of a covenant, be declared by a designated line and nothing more. It must be expressed in words, either definitely defining the covenant or making apt reference to the designated line, thus giving formal expression to the covenantor's purpose. [13 Cyc. 713, and notes.]

This conclusion is sustained by an almost unbroken line of cases, if not by express rulings by the facts themselves showing on the face of the instruments affecting the property, either in express words or by clear implication, a purpose to create a restriction. [King v. Union Trust Co., 226 Mo. l. c. 367; Scharer v. Pantler, 127 Mo. App. 433; Hisey v. Church, 130 Mo. App. 566; Kitchen v. Hawley, 150

Mo. App. 497; Miller v. Klein, 177 Mo. App. 557; Bolin v. Tyrol Inv. Co., 178 Mo. App. 1.]

An exception to this rule is found in Simpson v. Mikkelsen, 196 Ill. 575, which we decline to follow in the presence, especially in our own jurisdiction, of a strong current of authority to the contrary. The reason for the ruling of the majority is evident. A restrictive covenant lessens the fee and is not favored in law. It should, therefore, be made manifest in no uncertain manner and not be left entirely to implication, as in this case. It has been expressly ruled elsewhere, and is in accord with our reasoning, that a covenant not to use property except in a certain way will not be inferred from the absence of words of restriction. [Madore's Appeal, 129 Pa. St. 15.]

In the presence of the concrete facts, in the instant case, these general deductions are authorized: that to create the limitation on the fee herein contended for, a covenant must have been created; and it is not material whether it be termed an equitable easement, as in King v. Union Trust Co., supra, or a servitude or a restricted covenant. If express, it must be in writing, i. e., declared in so many words (Fuhr v. Dean, 26 Mo. l. c. 119; Petty v. Church of Christ, 70 Ind. l. c. 297); if implied (and here also note the necessity of the use of words by the covenantor), the implication from the words used must be such as will clearly authorize the inference or imputation in law of the creation of the covenant. The only exception to this rule is in the case of implied covenants, classified as covenants in law, or those which the law implies or intends from the nature of the transaction although not given form in words in the instrument containing them. Thus in conveyances in fee containing the words "grant, bargain and sell," a covenant of warranty

is implied. [Stoepler v. Silberberg, 220 Mo. 258; Waldermeyer v. Loebig, 222 Mo. 540.] Express recognition of this rule is given by our statute (Sec. 2793, R. S. 1909); but it existed at common law (Coke Lit. 384b; Rawle Cov. 5), the statute, and others of like nature, being merely declaratory of same (2 Reeves' Hist. Eng. Law. 54); and in a lease the term ''demise'' is held to import a covenant on the part of the lessor of right and title to make the lease and for quiet enjoyment. [Crouch v. Fowle, 9 N. H. 219, 32 Am. Dec. 350.]

But no such rule exists in regard to covenants carrying a restriction. These, for the reasons stated, must be defined. This has not been done; and while the tendency of the courts is to disregard restrictive covenants, we would be inclined to sustain the plaintiffs' contention if the facts showed that by so doing the intent of the original grantor would thereby be effected. But we do not so interpret the evidence. We therefore decline, on the proof alone of a designated line appearing on the plat, to read into the conveyances of the property subdivided an express restriction, the effect of which would be to limit the use of and lessen the tenure by which the owners hold these lots.

From the foregoing it follows that the judgment below should be reversed and the case remanded with directions to the trial court to dismiss plaintiffs' action and to enter judgment for the defendants, and it is so ordered. All concur.