HILL v. RABINOWITCH.

1. DEEDS — BUILDING RESTRICTIONS — ENFORCEMENT BY EQUITY
   COURTS.
   The court of equity has power to enforce building restric-
   tions, and where definite, fixed and unambiguous, they
   should be enforced as written and not extended by judicial
   construction.

2. SAME—COURTS WILL NOT EXTEND RESTRICTIONS.
   Where, in the dedication of a plat, certain lots were des-
   ignated for residential purposes and certain others for
   mercantile purposes, and in the restrictions it was pro-
   vided that no dwelling house or residence should be erect-
   ed nearer to the street than the building line shown on
   the plat, but no such restriction was expressed as to the
   business lots, the courts will enforce only such restric-
   tions as are expressly provided, and will not extend the
   same to the business lots.

3. SAME—RESTRICTIONS NOT EXTENDED BY GENERAL PLAN.
   In a suit to restrain defendant from building on business
   lots nearer to the street than the line provided for the
   residential lots, plaintiffs' contention that there has been
   such a general plan of improvement, so agreed to and.
   acquiesced in by all the interested parties as to prevent
   the use of such lots as defendant contemplates, and that
   the use of such lots should be restricted to conform to
   such general plan of improvement, *held*, not sustained
   by the record.

4. SAME—BUSINESS PURPOSES— RESIDENTIAL PURPOSES — INJUNC-
   TION.
   Defendant, having elected to use the lots in question for
   mercantile purposes, may not use any part of the building
   so constructed for residential purposes, and an injunction
   will issue restraining such use.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted April 23, 1920. (Docket No. 96.) Decided
May 18, 1920.

For authorities discussing the question as to what part of
a structure must be beyond the line to constitute a violation of
a building restriction, see note in 52 L. R. A. (N. S.) 1044.

On multiple residence structures as violation of restrictive
covenants, see notes in 45 L. R. A. (N. S.) 726 and L. R. A. 1918C,
873.

Bill by Louis Hill and others against Samuel Rabin-owitch to enjoin the violation of certain building restrictions. From a decree for plaintiffs, defendant appeals. Reversed, and decree entered.

*Hayes & Maurer* (*Harry Holden MacCord*, of counsel), for plaintiffs.

*Behr & Coolidge* (*Clifton G. Dyer*, of counsel), for defendant.

FELLOWS, J. In the summer of 1911 James S. Holden, Daniel E. Murray, Dexter M. Ferry, Jr., and Jeannette Hawkins Ferry, his wife, executed a plat of a subdivision known as Holden & Murray's subdivision, and caused the same to be recorded. The plat contained the following restrictions:

"The premises described in the within plat and subdivision are hereby subjected to the following restrictions, agreements and covenants which shall continue in force until January 1, 1937, and no longer, and that during that period shall be observed by the proprietors herein described and by their grantees and assigns and the heirs, executors, administrators and assigns of any of them. A building line is shown upon the different lots designated in said plat and no dwelling house or residence erected on said premises, excepting the front steps and the porches and piazzas appurtenant thereto, shall be built, erected or maintained nearer to the front or street line of said premises than is designated by said building line, the same being as follows, to wit: For that part fronting on Dexter boulevard and Lothrop avenue, 30 feet from the front or street line, and for lots fronting on Manchester, Hogarth and Whitney avenues, 25 feet from the front or street line. No building or part thereof shall be erected or maintained within six feet of the street line of lots 10, 15, 42, 47, 84, 89 and 137, projections forming a part of the body of the building shall be construed to be a part of the dwelling and must be set within the building lines designated. Said premises shall be used for residence purposes only,

excepting that lots 1, 27, 62, 63, 64, 65, 111 and 112 may be used for mercantile purposes or for a terrace or apartment building with a reasonable amount of the adjacent lots to the east thereof not to exceed three lots. On the lots fronting on Dexter boulevard, Manchester and Lothrop avenues, no other than a single dwelling house or ,residence not less than two stories high and costing not less than $2,500.00, * * * and bungalows with a studding not less than 12 feet high and costing not less than $2,000.00, shall be erected. The term 'two stories' shall be held to mean buildings having a studding or post of not less than 18 feet in height. No part of any dwelling house or residence erected thereon shall be built or maintained nearer than three feet to the side property line of the owner thereof. Not more than one barn, stable or garage may be built or maintained as appurtenant to each dwelling house erected thereon, and the same shall not be built or erected excepting simultaneous with or after the completion of such residence. No shed or structure of any nature shall be built, erected or maintained on said premises until after the completion of the building erected thereon for residence purposes, nor shall any fence be built, constructed or maintained on any part of said premises until the nature, kind, shape and material has been approved by the proprietors herein, or their heirs, executors or legal representatives."

The land was then farming land and lay between Dexter boulevard and Grand River avenue which was not then built up at this point as a business street. Dexter boulevard runs due north and south while Grand River avenue runs more nearly in a northwesterly and southeasterly direction. There were 139 lots in the subdivision. Lots 1, 27, 62, 63, 64, 65, 111 and 112 lay along Grand River; these lots were not regular in shape and are spoken of somewhat inaccurately as triangular. Running east and west through the subdivision were Whitney, Hogarth and Manchester (now Northwestern) avenues, and the south line was Lothrop avenue. The sale of the lots

was conducted by the real estate firm of Holden & Murray. Circulars were distributed by this firm advertising the subdivision which called attention to the attractive features of it as a highly restricted district and some of the language of the circulars went farther than the restrictions recited; but the circulars had printed *verbatim* the restrictions found in the plat and such restrictions were inserted in all land contracts and deeds made and executed. Mr. Murray, one of the proprietors of the plat, was called as a witness for the plaintiffs; he testified among other things that if there were contradictions between the circular and the restrictions the customer's attention was called to it, and that the restrictions would control. The lots met a ready sale and practically all of them which were for use for residential purposes only have been built upon and the record discloses a remarkable freedom from infractions of the restrictions. There was upon the plat as recorded a line showing the building line on Dexter boulevard, Whitney, Hogarth, Manchester (now Northwestern) and Lothrop avenues, and in but one instance so far as we can discover from the record has any part of a dwelling house encroached beyond this line.

Since the filing of the plat business has pushed out Grand River avenue to and beyond this subdivision. It is now a noisy, business thoroughfare, paved 70 feet in width, with two street car tracks, carrying city and interurban cars. It is admitted by all that the development of business on Grand River avenue with stores where the residents may trade has materially increased the value of the residence property. The Peoples State Bank purchased lots 62 and 63 and erected a bank building on the south part of them fronting on Grand River avenue. The bank advertised and offered the balance or north part of the lots for sale. This part had a frontage of 139 feet on

Grand River avenue. Defendant's attention being attracted to this property he opened negotiations with the bank for its purchase. His attention was called to the restrictions and he submitted the matter to his attorney, and being advised that he could use the entire frontage on Grand River for mercantile purposes, purchased the premises, paying $28,200 therefor. He had plans made for the erection of store buildings fronting on Grand River avenue and commenced excavating up to Hogarth avenue, contemplating the use of the land for such store building up to the line of Hogarth avenue.

The plaintiffs are owners of residential property on Hogarth avenue, being all located in the first block east from lots 62 and 63 upon which defendant proposed to erect the store building. They filed this bill for an injunction to restrain the erection of the store building nearer than 25 feet from the south line of Hogarth avenue, and were awarded such a decree by the trial court, to review which defendant brings the case here.

Much has been written by this court, especially in recent years, upon the subject of building restrictions. The law is so well settled in this State that it is not necessary to review it. The power of a court of equity to enforce building restrictions is beyond question. Where the restrictions are definite, fixed and unambiguous they should be enforced as written and should not be extended by judicial construction. As was said by this court in *Casterton* v. *Plotkin*, 188 Mich. 333:

"Inasmuch as defendant's deed does contain restrictions specifying just what use can, or cannot, be made of the property, and sets limitations for the kind of building which may be built, nothing further or different is to be implied."

So in the instant case if these restrictions definitely state what may and what may not be done with the

property, we should not imply additional restrictions to those fixed by the parties themselves.

Turning to the plat and restrictions as filed we find 131 lots platted for residential purposes, and 8 of irregular shape which are available for business purposes. As to the residential lots the restrictions are quite definite. The kind and cost of the dwellings, the number and character of the outbuildings which may be erected is fixed, and no *dwelling house or residence* may be erected nearer to the street than the building line shown on the plat and fixed in the restrictions; and all of the 131 lots must be used for residential purposes only. As to the other 8 lots, those of irregular shape lying along Grand River avenue, it is permitted that they "may be used for mercantile purposes," and there can be found in the restrictions no express inhibition against their use, and their entire use for that purpose. Unless we may imply such restriction or by construction add such restriction to those the parties have made the plaintiffs must fail in their contention. The language is not ambiguous nor do we think the delineation of a building line on the plat when taken in connection with the language used in the restrictions of importance. The purpose of this building line is definitely stated; it is to fix the line beyond which "dwelling houses or residences" may not be erected. Obviously if defendant sought to use these lots for residential purposes he would be restricted in such use by the building line, but he is permitted to use them for "mercantile purposes," and as to that use the building line does not apply unless we may add to the restrictions language not found therein. This we may not do. The parties have attached a distance from the street as one of the restrictions applicable to dwelling houses and residences; they have not attached such restrictions when the

210—Mich.—15.

premises are used for mercantile purposes. We may only enforce those restrictions which were in existence when defendant bought the property.

But it is insisted by plaintiffs that there has been such a general plan of improvement, so agreed to and acquiesced in by all the interested parties as to prevent the use of these lots as defendant contemplates; and that the use of such lots should be further restricted to conform to such general plan of improvement. Our difficulty in following plaintiffs in this contention lies in the fact that we are not satisfied from this record that there was a general plan of improvement extending beyond the restrictions enumerated. That there was some puffing of the subdivision in the circulars is to be expected, but, as we have shown, the actual restrictions were there printed and prospective purchasers were told that the restrictions controlled. And while the owners of the residential lots have to the number of over a hundred scrupulously adhered to the restrictions found in the plat, and in only one instance have they been violated and then but slightly, we do not find in this fact or in the testimony introduced at the hearing evidence of a general plan involving additions to the recorded restrictions. Under these circumstances it becomes unnecessary to consider what rights plaintiffs would have if there had been a general plan of improvement agreed upon and acquiesced in by all the interested parties extending the restrictions beyond those found in the plat.

The building which defendant has planned to erect consists of six stores with rooms over them. These rooms would be suitable for offices or flats. Defendant in his brief disaffirms any intention or desire to use the second story for flats. Defendant has elected to use these lots for mercantile purposes and we have held that when so used he could occupy all of them with his building. He may not use any part of the

building so constructed upon the whole of the lots for residential purposes and while defendant states. that he has no intention to so use them, we think any question about the matter should be put at rest by an injunction restraining such use.

It follows that the decree of the court below must be reversed and one here entered in conformity with this opinion. Defendant will recover costs of this court, plaintiffs costs of the court below.

MOORE, C. J., and STEERE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. BROOKE, J., did not sit.