FRENCH *v.* WHITE STAR REFINING CO.

1. COVENANTS — BUILDING RESTRICTIONS — WHERE GENERAL PLAN HAS BEEN FOLLOWED RESTRICTIONS WILL BE ENFORCED.

Where the general plan of restricting a district to residential purposes has been generally observed, said restriction will be enforced, although the original plat and the deeds to some of the lots contained no restrictions.[1]

2. SAME — ELECTRIC SIGNS ON VACANT LOTS NOT A WAIVER OF BUILDING RESTRICTIONS.

Electric signs erected on vacant lots and a doctor's sign hanging from his residence, *held*, too transient to give a permanent character to the locality and therefore not a waiver of restrictions for residential purposes only.[2]

3. SAME—NOTICE—LESSEE HAVING NOTICE OF RESTRICTIONS BOUND THEREBY.

Lessee of lot who had notice that said lot was restricted to dwelling purposes in its lessor's deed, and had further notice that said district for two or three blocks was given over entirely to residential purposes, is entitled to no particular equitable consideration, when it seeks to invade said district with a gasoline filling station, because its lease contained no restriction.[3]

Appeal from Wayne; Goff (John H.), J. Submitted October 30, 1924. (Docket No. 22.) Decided December 31, 1924.

Bill by Ricardo D. French and others against the White Star Refining Company to enjoin the violation of certain building restrictions. From a decree for plaintiffs, defendant appeals. Affirmed.

*E. A. Fink* and *Lodge & Brown* (*Sherman D. Callender,* of counsel), for plaintiffs.

*Henry C. Bogle,* for defendant.

[1]Deeds, 18 C. J. § 463; [2]Id., 18 C. J. § 468; [3]Id., 18 C. J. § 458.

BIRD, J.   This bill was filed to restrain defendant from erecting a gasoline filling station on the northeast corner of East Grand Boulevard and Ferry avenue, on the theory that the location was one restricted to residential purposes.   The trial court was impressed with the plaintiffs' contentions and enjoined defendant as prayed.

The principal contentions of defendant are:

(1) That the *locus in quo* is not restricted to residential purposes.

(2) That if it has been restricted to residential purposes the restrictions have been waived.

It appears from the record that the land constituting the subdivision in question was owned in 1863 by George Beste.   In that year he died, leaving a widow, two boys and two girls.   In 1881 the mother and children platted the same and duly recorded it.   It was subdivided into 20 lots, numbered from 1 to 20, situate on the east side of East Grand Boulevard. The lots, by the original plat, were 256.8 feet in depth by 82.70 feet in width.   About the year 1886, 50 feet were taken off from the west end of these lots for the purpose of widening East Grand Boulevard. This left the lots fronting on the Boulevard 206.8 feet in depth.   Subsequently an alley 18 feet in width running north and south was put through the subdivision north of Ferry avenue.   This deduction left the lots on East Grand Boulevard 100 feet in depth, and those on the east side of the alley 88.8 feet in depth fronting on Field avenue.   The lots were divided between the four children, but subsequently the daughters of George Beste conveyed their lots to the sons, Anthony and Joseph.   Some time in the 80's the lots were subdivided into smaller lots.

Recently the defendant leased from Frank Schaefer the north 41.40 feet of lot 7, and started to construct a gasoline filling station.   This lot was conveyed by

Joseph Beste in 1919 to Frank Schaefer.   The deed contained the following restriction:

"That no building shall be erected thereon other than for dwelling purposes only."

There was no restriction in Schaefer's lease to defendant, but defendant admits in open court that it had actual knowledge of the restriction in the deed from Beste to Schaefer.   There were no building restrictions in the original plat which was recorded, but the restrictions appear in the deeds to certain of the lots sold by the Beste heirs.   Some of the lots were sold without any restrictions.   Counsel relies upon this fact to establish his contention that the territory is not restricted.

In *Allen* v. *City of Detroit*, 167 Mich. 464, we said:

"That a portion of the conveyances do not contain the restrictions will not defeat the same.   Although some of the lots may have written restrictions imposed upon them and others not, if the general plan has been maintained from its inception, if it has been understood, accepted, relied on and acted upon by all in interest, it is binding and enforceable on all *inter se.* It goes with the land, and is equally binding on all purchasers with notice.   5 Am. & Eng. Ency. Law (2d Ed.), p. 3; *Tallmadge* v. *East River Bank,* 26 N. Y. 105; *Trustees* v. *Lynch,* 70 N. Y. 440 (26 Am. Rep. 615); *Lewis* v. *Gollner,* 129 N. Y. 227 (29 N. E. 81, 26 Am. St. Rep. 516); *Frink* v. *Hughes,* 133 Mich. 63; *Harris* v. *Roraback,* 137 Mich. 292 (109 Am. St. Rep. 681); *James* v. *Irvine,* 141 Mich. 376; *Stott* v. *Avery,* 156 Mich. 674; *Tilitson* v. *Gregory,* 151 Mich. 128."

See, also, *Harvey* v. *Rubin,* 219 Mich. 307.

The testimony persuades us that there was a general plan by the Beste heirs to restrict this neighborhood to residential purposes, and that this plan has been adhered to.   In the early history of the subdivision, that vicinity was sparsely settled, and not as much attention was given to the restriction when sales were

made.    Later, as the locality began to develop and be improved, greater care was taken to add restrictions as sales were made by the Bestes.    One of the best evidences that it was intended to be a restricted district is the fact that the restrictions have been observed and nothing but dwellings erected.    The locality has been invaded by no business.    A single exception, however, to this occurred when a tool house was erected on one of the lots, the neighbors purchased the owner's interest and it was discontinued.    While some lots were restricted and others not, it appears to have been understood and regarded in the neighborhood as a restricted district, and its observance up to the present time will, under our holdings, entitle it to protection as such.

But counsel says that the restrictions have been waived because electric signs have been erected on certain of the vacant lots and a doctor's sign has been hung from his residence.    We are not of the impression that these infractions are of sufficient importance to sustain the claim of waiver.    They are of a temporary character and too transient to give a permanent character to the locality.    18 C. J. p. 403.

It appears that defendant knew that this particular lot 7 was restricted to dwellings.    It admits that it had actual notice of the restriction before it leased the property.    It further had notice of the fact that that part of the Boulevard for two or three blocks was given over entirely to residential purposes, and we are unable to see how defendant is entitled to any particular equitable consideration in attempting to invade that territory with a business which is objectionable to all of its inhabitants.    We are satisfied with the decree of the trial court and it will be affirmed, with costs to the plaintiffs.

CLARK, C. J., and MCDONALD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.