### KIME v. DUNITZ.

1. COVENANTS—RESTRICTION IS IN NATURE OF COVENANT—MAY NOT BE IMPLIED.
    A restriction is in the nature of a covenant, and may not be implied in any conveyance (3 Comp. Laws 1915, § 11691), but must be expressed in words, or by such apt reference to the plat as to give expression to the grantor's purpose.

2. SAME—DOTTED LINE ON PLAT INSUFFICIENT TO CONSTITUTE RESTRICTION.
    A dotted red line running across lots fronting on a certain avenue on the plat of a subdivision, with the words "Line of buildings 30 feet from line of" said avenue, does not in itself constitute a valid building line restriction.

3. SAME—BUILDING LINE NOT VALUABLE TO LOTS USED FOR BUSINESS PURPOSES.
    While building lines are appropriate to and of value to lots restricted to residence purposes, they are not appropriate to and tend to lessen the value of lots that may be used for business purposes.

As to effect of lines or other indications on recorded plot, to create an implied covenant, see annotation in L. R. A. 1917A, 458.

4. SAME—INJUNCTION—GENERAL PLAN NOT OBSERVED.

> Where use of property purchased by defendants was in no way restricted in their deed or in former conveyances, and there had been no general observance by other owners of a building line 30 feet from the street line as indicated on the plat by a dotted red line, parties owning residences on the other side of the street are not entitled to enjoin defendants from building an apartment house flush with the street line.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 22, 1930. (Docket No. 132, Calendar No. 34,813.) Decided March 6, 1930.

Bill by Elmer J. Kime and others against Harry Dunitz and another to restrain violation of an alleged building line restriction. From a decree for plaintiffs, defendants appeal. Reversed.

*Seymour J. Frank* and *Miller, Baldwin & Boos* (*William Henry Gallagher,* of counsel), for appellants.

*Stevenson, Butzel, Eaman & Long* (*Charles E. Goodrich,* of counsel), for appellees.

SHARPE, J. The plat of Highland Park subdivision was recorded on November 11, 1886. It embraces the territory lying between Woodward avenue on the east and Hamilton (formerly Greenwood) avenue on the west, and between Glendale avenue on the north and the alley south of Cortland avenue on the south. It contains 216 lots. Dotted red lines on the plat run across the lots fronting on Highland and Cortland avenues, and near this line on the lots fronting on Highland appear the words "Line of buildings 30 ft. from line of Highland ave." The plat is otherwise unrestricted.

The north side of Highland avenue for a distance of 600 feet west of Woodward, and of a depth of 234 feet, is not included in this plat. The defendants own lot 174 and the east 20 feet of lot 173, adjoining this land on the west. Next adjoining defendants' land on the west is the property of the plaintiff Michigan Bell Telephone Company. Second avenue lies a few hundred feet further to the west. The other plaintiffs own residence properties on the south side of Highland avenue between Second and Woodward avenues.

This suit is brought to enjoin the defendants from constructing an apartment building on their property with the front thereof flush with the street line. The trial court held that plaintiffs were entitled to the relief prayed for, but limited the restraint to 20 feet from the street line, for the reason that Highland Manor, hereafter referred to, had been permitted to be so constructed. From the decree entered defendants have appealed.

There are two apartment buildings on the 600-foot strip whose fronts are on the street line; that to the west adjoins the lots of the defendants. The telephone company has constructed a building for its use on its property. It stands back 30 feet from the street line. Across the street, and a little further to the east, stands a large apartment building known as "Highland Manor," the front of which extends to within about 20 feet of the street line. A church stands on the southwest corner of Highland and Woodward, built close to the street line of the former, and several other buildings to the west of it were built without regard to the 30-foot building line. To the west of Second avenue many buildings have been erected for use as apartments or business, with little, if any, regard for the dotted line or notation on the plat as a restriction; one of which,

erected by the defendants, known as the Daniel Apartments, containing 59 apartments, extends to within 7 feet of the street line, the steps leading down thereto.

Before defendants' purchase, they had the title examined. The use of the property was in no way restricted in any of the former conveyances. The dotted line on the plat was seen. They were advised (and the evidence submitted discloses) that in a suit brought in 1921 in the circuit court for Wayne county, in chancery, wherein it was sought to enforce the 30-foot building line as a restriction by property owners on Highland avenue near Hamilton avenue, the trial court had held that this line was not a restriction, and no appeal therefrom had been taken. They began the erection of an apartment building to cost about $225,000, and, after an expenditure of a considerable sum for plans and excavation and construction work, were enjoined from proceeding.

Defendants insist that the dotted line, with the notation on it, "Line of buildings 30 ft. from Highland avenue," does not in itself constitute a valid building line restriction. In this we think they are right. A restriction is in the nature of a covenant, and may not be implied in any conveyance. 3 Comp. Laws 1915, § 11691. It must be expressed in words, or by such apt reference to the plat as to give expression to the grantor's purpose. Such a line appeared upon the plat involved in *Windemere, etc., Ass'n* v. *Bank,* 205 Mich. 539, but was not decisive of the conclusion there reached. In *Hill* v. *Rabinowitch,* 210 Mich. 220, the plat designated certain lots for residence purposes and certain others for mercantile purposes, and in the restrictions therein it was provided that no residence should be erected nearer to the street than the building line shown

thereon. We have no other decision in which the question was presented. Defendants' contention is, however, supported by many decisions in other States. See *McCloskey* v. *Kirk*, 243 Pa. 319 (90 Atl. 73); *Zinn* v. *Sidler*, 268 Mo. 680 (187 S. W. 1172, L. R. A. 1917 A, 455), and cases cited.

Plaintiffs' counsel say "that it is not the line alone and in itself upon which the plaintiffs rely." It is their claim that "all the necessary elements of a general plan have been shown." They insist that the dotted line and the notation on the plat indicate an intention on the part of the platter to restrict the use of the property to residence purposes, and to require each of such residences to be set back 30 feet from the line of the street. Had such intention as to residences been adhered to by the owners, and enforced by them and by early purchasers of lots, the line and writing on the plat might be here urged as the origination by the platters of a general plan to secure uniformity in the front line of all residences constructed.

While building lines are appropriate to and of value to lots restricted to residence purposes, they are not appropriate to and but tend to lessen the value of lots that may be used for business purposes. The purpose of restrictions in residential property is to benefit the owner by securing to him a better price for the land platted, and to secure to purchasers the right to live in a purely residential district, unaffected by the conditions which prevail in a business district, or in one in which residences and business places are indiscriminately mixed. Soon after the record of the plat, conveyances were made to four different grantees of lots on Cortland and Glendale avenues, containing restrictions of use

to residence purposes, but later, in 1888 and 1889, more than 100 lots were conveyed by the owners, in which no such restriction appeared. The right to enforce it is not now claimed.

"Owners of property have rights therein which must be respected. It is only under unusual circumstances that its use will be restricted other than by the provisions in the conveyance on which the title rests." *Miller* v. *Ettinger,* 235 Mich. 527, 530.

It should appear not only that such a plan had been originated, but "that it was being consistently followed and maintained." *Library Neighborhood Ass'n* v. *Goosen,* 229 Mich. 89, 95.

"One of the best evidences that it was intended to be a restricted district is the fact that the restrictions have been observed and nothing but dwellings erected." *French* v. *White Star Refining Co.,* 229 Mich. 474, 477.

Intending purchasers are thereby charged with notice.

As was said in *Sanborn* v. *McLean,* 233 Mich. 227, 230 (60 A. L. R. 1212):

"Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan."

And further, as to the necessity of notice (232):

"We do not say Mr. McLean should have asked his neighbors about restrictions, but we do say that with the notice he had from a view of the premises on the street, clearly indicating the residences were built and the lots occupied in strict accordance with a general plan, he was put upon inquiry * * *."

An examination of the record, including the survey, plats, and photographs introduced, leads us to the conclusion that persons seeking to purchase property in this subdivision, from observation as to the use which had been made of the several lots then occupied, would not be led to believe that a general plan of construction under which all buildings must be erected 30 feet from the street line was in existence.

It follows that a decree may be here entered dismissing the bill of complaint, with costs to appellants.

WIEST, C. J., and BUTZEL, CLARK, POTTER, NORTH, and FEAD, JJ., concurred. McDONALD, J., did not sit.