CLARK *v.* MURPHY

1. PROPERTY—RESTRICTIONS ON USE—RECIPROCAL NEGATIVE EASE-
MENT.
   Restrictions in deeds issued by the original common owner of a
   subdivision constitute a general plan running with the land
   and under the doctrine of reciprocal negative easements these
   restrictions apply to all lots in the subdivision.

2. PROPERTY — RESTRICTIONS ON USE — RECIPROCAL NEGATIVE EASE-
MENT.
   A restriction must be traceable to a common owner in order to
   give rise to a reciprocal negative easement, and therefore
   defendants cannot be prevented from constructing dwellings
   containing apartments on their subdivision lots where a clause
   in the restrictive covenant contained in the deed from the
   original common owner of all the lots in the subdivision
   provided that no building of more than two apartments could
   be erected on less than 60 feet of frontage, but the deeds to
   the plaintiffs' property from the heirs of the original common
   owner contained restrictive covenants providing that no build-
   ings with more than two apartments could be erected at all
   except on certain lots not in litigation.

3. PROPERTY — RESTRICTIONS ON USE — ENFORCEABILITY — GENERAL
SCHEME.
   There must be a general scheme before a restriction imposed by
   a reciprocal negative easement can be enforced, even against
   a common owner or those taking from him without restriction,
   if there is a restriction in each deed to the grantees seeking to
   enforce the reciprocal negative easement but no express cove-
   nant by the grantor to bind the remaining land.

REFERENCES FOR POINTS IN HEADNOTES
[1–3]  20 Am Jur 2d, Covenants, Conditions and Restrictions §§ 168,
   169, 173, 175, 176, 182.

Appeal from Wayne, Edward S. Piggins, J. Submitted Division 1 January 7, 1969, at Detroit. (Docket No. 4,014.)   Decided February 28, 1969.

Complaint by Elton W. Clark, and other property owners similarly situated, against Celeste M. Murphy and Norman Murphy to enjoin construction by defendants of certain apartment buildings on their property.   Judgment for defendants.   Plaintiffs appeal.   Affirmed.

*Dorothy E. Broeder,* for plaintiffs.

*Reid & Gilmore,* for defendants.

BEFORE: LESINSKI, C. J., and J. H. GILLIS and T. M. BURNS, JJ.

PER CURIAM.   Plaintiffs are owners of individual lots located in the Marygrove Outer Drive Park Subdivision.   Defendants are the heirs and devisees of James Murphy, the original common owner of the entire plat.

The subdivision, consisting of 495 lots, was platted on May 19, 1925 by the common owner.   Property was sold by the common owner on land contracts which were not recorded.   These land contracts contained various restrictions, only 2 of which are of importance to the present litigation:

Clause 4.   "No building of more than two apartments shall be erected on less than 60 feet of frontage, except lots nos. 134, 135, 136 and 137."

Clause 6.   "That all plans of buildings shall be first submitted to the vendors for written approval and no construction work shall be begun until said approval had been received in writing."

Deeds were subsequently issued to 69 lots by the common owner. These deeds incorporated all of the land contract restrictions, but clause 6 was modified to read:

"For a period of 15 years from and after this date all plans of buildings shall first be submitted to parties of the first part or their successors in title for written approval and no construction work shall be begun until said approval has been received in writing."

Clause 4 as found in the land contracts and clause 6 as modified are the restrictions of record on these 69 lots.

The common owner died May 23, 1934. The remaining lots in the subdivision were devised to Joseph E. Murphy and Michael W. Murphy, his sons. Defendant, Celeste M. Murphy, is the widow of Joseph E. Murphy. Norman Murphy, the other defendant, is their son.

The heirs and devisees issued 354 deeds containing the same restrictions found in the original 69 deeds with the exception of clause 4. This clause was amended to read as follows:

"No building of more than two apartments shall be erected except on lots nos. 134, 135, 136, and 137."

Apart from lots 134–137, the original clause 4 permitted construction of buildings of more than two apartments in certain cases. As amended, clause 4 limited to two apartments the size of all buildings constructed.

The remaining 72 deeds were issued by the heirs and devisees containing only the statements that these deeds were "subject to restrictions of record" or "to recorded restrictions."

All of the 26 lots in controversy are at the present time in the possession of the heirs and devisees.

None of these lots specifically contain the amended clause 4 in their record. They consist of lots which were either unsold or sold by the common owner on land contracts and reobtained by him or his heirs and devisees.

It is defendants' intention to build four apartment buildings of more than two apartments on the lots in question. Plaintiffs appeal from the circuit court's refusal to issue an order enjoining defendants from erecting such buildings.

Plaintiffs contend that the land contract restrictions in the deeds issued by the common owner constituted a general plan running with the land and that under the doctrine of reciprocal negative easements these restrictions apply to all lots in the subdivision. We agree with this contention, based on the classic holding of *Sanborn v. McLean* (1925), 233 Mich 227 (60 ALR 1212). However, these restrictions do not prohibit the type of construction contemplated by defendants. The only restriction which does prohibit buildings of more than two apartments is the modified clause 4 appearing in the deeds issued by the heirs and devisees. Since there were no express promises, written or oral, by the heirs and devisees that such restriction would apply to lots other than those on which it was imposed by deed, the narrow question for our determination is whether such restriction is imposed on the lots in question by virtue of the fact that it is incorporated in deeds to other lots issued by the heirs and devisees.

We agree with the circuit court's finding that the doctrine of reciprocal negative easements does not apply to the restriction of the modified clause 4 in the deeds given by the heirs and devisees. The rule in Michigan is that a restriction must be traceable to a common owner in order to give rise to a

reciprocal negative easement. *Cook* v. *Bandeen* (1959), 356 Mich 328. There can be but one common owner of a subdivision and that was James Murphy, not his heirs. The restriction is not traceable to him. We reject plaintiffs' suggestion that the modification of the original clause 4 by the heirs and devisees did not involve a change in the basic purpose of the restriction and that therefore it is traceable to a common owner. Both clauses restrict the use of the lots to residential purposes, but the modified restriction clearly forbids the construction of buildings of more than two apartments permitted under the original restriction in certain cases. Plaintiffs attempt to show, moreover, that the grantees of the common owner, because they constructed single residences on their lots, are now bound, by acceptance and acquiescence, by the restriction in modified clause 4. But we find no authority for the novel proposition that a permissible use of the property is rendered impermissible because the voluntary, different use of the property happens to conform to a restriction in the deeds of certain other lot owners in the subdivision who took from other than the common owner.

As for the lots now owned by defendants, even where a common owner is involved, if there is a restriction in each grantee's deed but no express covenant by the grantor to bind the remaining land, there must be a general scheme to enable the restriction to be enforced. 7 Thompson on Real Property, Covenants in Deeds, § 3163. The trial court held that,

"the subsequent modification of such restrictions by his heirs and successors in interest, by specific inclusion of such modifications in the conveyances of lots thereafter sold by them, did not constitute a general plan binding upon lots not conveyed by

them and now owned by their descendants, defendants herein."

Plaintiffs assert that a general plan is evidenced by the fact that the lots sold have been used exclusively as single-family residences over a period of years. However,

"no court has gone so far as to intimate a rule that the mere building of single dwellings or the adoption of any particular style of architecture by others in a block is notice to the owner of a lot only restricted to residential purposes that he must do likewise or protest in order to protect his rights." *Casterton* v. *Plotkin* (1915), 188 Mich 333, 339.

As stated in *Denhardt* v. *DeRoo* (1940), 295 Mich 223, 228:

" 'Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear.' *Casterton* v. *Plotkin* (1915), 188 Mich 333.

"It has been said that only under unusual circumstances will the use of property be restricted other than by provisions in the conveyance on which the title rests. *Miller* v. *Ettinger* (1926), 235 Mich 527; *Kime* v. *Dunitz* (1930), 249 Mich 588. Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a 'scheme of restrictions' originating from a common owner. *Williams* v. *Lawson* (1915), 188 Mich 88; *McQuade* v. *Wilcox* (1921), 215 Mich 302 (16 ALR 997); *Kiskadden* v. *Berman* (1928), 244 Mich 473; *Nerrerter* v. *Little* (1932), 258 Mich 462; *Taylor* v. *State Highway Commissioner* (1938), 283 Mich 215; *Grant* v. *Craigie* [(1940), 292 Mich 658]. A restriction placed in the title to a single lot does not establish such a plan. *Taylor* v. *State Highway Commissioner, supra.* The general plan must have been 'maintained from its inception,' and 'understood, accepted, relied on, and

acted upon by all in interest' (*Allen* v. *City of Detroit* [1911], 167 Mich 464, 469 [36 LRA NS 890]). *Library Neighborhood Association* v. *Goosen* (1924), 229 Mich 89; *French* v. *White Star Refining Co.* (1924), 229 Mich 474; *Signaigo* v. *Begun* (1926), 234 Mich 246; *Kime* v. *Dunitz, supra.* The scheme must have its origin in a common grantor; 'it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan' (*Sanborn* v. *McLean, supra*). See, also, *Casterton* v. *Plotkin, supra,* and *Miller* v. *Ettinger, supra.* Plaintiffs have failed to produce evidence tending to establish a plan founded by the common grantor. Nor is their case aided by the observation of Mr. Justice BIRD in *French* v. *White Star Refining Co., supra,* that: 'One of the best evidences that it was intended to be a restricted district is the fact that the restrictions have been observed and nothing but dwellings erected.'"

We conclude that the restriction incorporated in clause 4 of the deeds conveyed by the heirs and devisees of the common grantor is not binding on the lots owned by defendants.

Plaintiffs' contention that defendants are estopped to deny that the modified clause 4 in the deeds of the heirs and devisees is binding on all lots in the subdivision is inapposite. The contention is based on the erroneous assumptions that the restriction is traceable to the common owner and that the use of other lots for single-family residences imposed a general scheme by which defendants are bound. The relief sought is the imposition of a restriction on defendant's lots. Plaintiffs have failed to provide a theory on which such an imposition may be made and defendants are therefore free to use their lots subject only to the restrictions imposed by the common owner.

Affirmed. Costs to appellees.