Argued December 8, reversed December 20, 1927, costs taxed January 17, rehearing denied February 14, second petition for rehearing denied April 10, rehearing denied June 14, 1928.

# ROBERT B. MENSTELL ET AL. v. SARAH E. JOHNSON ET AL.

### (262 Pac. 853; 266 Pac. 891.)

**Covenants—Restriction Establishing Building Lines in Filed Articles of Dedication and Plat Held Words of Covenant (Or. L., § 9849).**

1. Where articles of dedication filed by owner of tract divided into residence lots recited that blue lines on plat which were certain distances from streets and avenues constituted "building lines," and such building lines were represented on plat filed, *held* that words referring to building lines were words of covenant within Section 9849, Or. L., providing that no covenant shall be implied in any conveyance of real property.

**Easements—Building Line Restriction in Articles of Dedication Held to Create Easement in Gross Enforceable by Grantees of Other Lots in Tract.**

2. Articles of dedication, filed by owner of tract divided into residence lots, reciting that blue lines on plat filed by owner were "building lines," *held* to create easement in gross which was enforceable by grantees of other lots in tract by suit in equity to compel removal of structure erected in violation of the covenant.

**Covenants—Building Lines Established in Articles of Dedication and Filed Plat Could not be Modified Without Consent of Previous Lot Purchasers, Who Relied on Plat.**

3. Building lines established in articles of dedication of tract platted into residence lots could not be modified by a new plan of restrictions without the consent or acquiescence of owners of lots previously sold with reference to the original filed plat establishing the building lines.

---

1. Effect of lines or other indication on recorded plat to create an implied covenant, see note in L. R. A. 1917A, 458. Dedication by maps and plats, see note in 10 Am. St. Rep. 189. See, also, 8 R. C. L. 895.

2. Right of purchaser of property under general plan to enforce common restriction against another purchaser, see notes in 14 Ann. Cas. 1021; Ann. Cas. 1913E, 822.

3. Effect of conveyance of lots laid down on plats to prevent a change in the use or form of the property, see notes in 14 L. R. A. (N. S.) 1067; 37 L. R. A. (N. S.) 953.

Injunction—Burden of Proving That Grantees of Other Lots in Tract Consented to Modification of Building Line Restrictions Held on Defendants Asserting It.

4. In suit to compel removal of structure violating building line restrictions in articles of dedication and plat filed by original owner, burden of proving that other lot owners in tract had consented to modification of building restrictions *held* on defendants.

Injunction—Evidence Held not to Sustain Burden on Defendants of Proving Valid Substitution of New Restrictions for Building Line Restrictions in Filed Plat and Articles of Dedication.

5. In suit to compel removal of structure violating building line restrictions in articles of dedication and plat filed by original owner, evidence *held* not to sustain burden on defendants of showing that restrictions had been validly modified by a new plan substituted therefor whereby building restrictions having a duration for only ten years and requiring a certain set-back from property line were substituted for old plan with consent or acquiescence of other lot owners.

Injunction—One Knowingly Violating Building Line Restriction will be Compelled to Move His Building to Proper Line Regardless of Expense.

6. One who enters a residential district, which owners have embellished and made attractive through the expenditure of money and labor, and erects his building within a few feet of the sidewalk line, knowing that this is a violation of building restrictions in articles of dedication and plat filed by original owner, will be compelled to move the structure to the proper line regardless of the expense.

### ON PETITION FOR REHEARING.

Dedication—Statutory Dedication by Recording Plat Operates by Way of Grant (Or. L., § 3809).

7. Statutory dedication of property by recording plat, under Section 3809, Or. L., operates by way of grant, and therefore one who seeks to enforce easement by virtue of statutory dedication need only prove words of grant.

Dedication—Designation of Blue Lines in Plat as Building Lines in Acknowledgment Made on Dedicating Property, Held to Give Property Owners a Public Easement for Light, Air, and Vision, Where City Accepted Dedication (Or. L., §§ 3807, 3809, 3824, 3826–3828).

8. Acknowledgment in dedication of property by recording plat, which referred to blue lines drawn on map, and designated them as building lines, where taken in connection with blue lines of plat, and fact that dedicator was creating high-class residential district, created easement for light, air and vision up to the building line in favor of adjoining property owners and public, under Sections

7. See 8 R. C. L. 897.

3807, 3809, 3824, 3826–3828, Or. L., where public authorities took charge of the avenues, streets and alleys, constituting acceptance by the city.

**Dedication—Dedication by Recording Plat may Create Public Easements (Or. L., § 3809).**

9. Dedication to public by recording of plat may be the means of creating various public easements under Section 3809, Or. L.

**Easements—Provisions of Plat and Acknowledgment are Treated as Part of Deeds to the Platted Property, so That Deed Need not Refer to Easement Created by Plat (Or. L., § 3809).**

10. Matter found in plat and acknowledgment under Section 3809, Or. L., is incorporated in deeds to the lots included within the plat, and easements created by the plat need not therefore be referred to in the deeds; deeds and plat being read together.

**Dedication—Failure of Deeds to Lots to Mention Building Line Established by Plat, and Incorporation in Deeds of Building Restrictions With Warranty, Held not to Constitute Abandonment or Rescission of Public Easement Created on Dedication (Or. L., §§ 3807, 3809, 3824, 3826–3828).**

11. Failure of deeds to various lots to refer to building lines established by plat, and incorporation into deeds of building restrictions, followed by warranty that property was free from all other encumbrances, *held* not to constitute abandonment or rescission of easement created in favor of property owners and public by the dedication under Sections 3807, 3809, 3824, 3826–3828, Or. L., where additional restrictions were not inconsistent, since matter found in plat is incorporated into the deeds.

**Dedication—Provision in Deeds to Lots, Permitting Vendor's Sale of Other Lots Without Condition, Held not to Eliminate Building Line Established in Plat (Or. L., §§ 3807, 3809, 3824, 3826–3828).**

12. Acceptance of deeds containing stipulation that vendor could "sell or otherwise dispose of and convey any other lot or lots or property in said Ladd's addition absolutely, or without condition," *held* not to constitute alteration of plat or vacation or elimination of building lines established by the acknowledgment of the plat, under Sections 3807, 3809, 3824, 3826–3828, Or. L., providing statutory method for vacating streets.

**Dedication—Recitals Contained in Deeds, not Inconsistent With Existence of Building Line, Held not to Affect Easement Created by Building Line Mentioned in Plat (Or. L., §§ 3807, 3809, 3824, 3826–3828).**

13. Where deeds to lots made no reference to building line appearing in plat, but contained no inconsistent recitals, the building lines and the easement established thereby were not altered by the deeds, under Sections 3807, 3809, 3824, 3826–3828, Or. L., though deed warranted condition of title; public having interest in easement established by the building lines.

**Dedication—Building Lines Established by Plat Held not Abandoned Where Successors of Person Dedicating Plat Took No Steps Under Statute to Vacate the Building Lines (Or. L., §§ 3807, 3809, 3824, 3826–3828).**

14. Building lines, established in acknowledgment to plat, which created easement in favor of public and property owners, *held* not abandoned, where no steps were taken by successors of person dedicating plat to vacate the lines established, under Sections 3807, 3809, 3824, 3826–3828, Or. L., providing methods for vacating streets.

**Injunction—In Suit to Remove Building for Violation of Building Line Easement Established Under Plat Only Rights of Parties to Suit Could be Determined.**

15. In suit to require removal of structure for violation of easement created by building line under plat,. only rights of parties to suit could be determined.

---

Covenants, 15 C. J., p. 1214, n. 57, p. 1218, n. 14.
Dedication, 18 C. J., p. 41, n. 32, p. 58, n. 14, p. 61, n. 26, p. 63, n. 55, 56, p. 109, n. 8, p. 110, n. 10, p. 117, n. 13, p. 119, n. 52, p. 120, n. 53, 59, p. 125, n. 39.
Deeds, 18 C. J., p. 282, n. 50, p. 384, n. 86, p. 394, n. 16, p. 395, n. 21, p. 397, n. 61, p. 401, n. 94, p. 404, n. 24.
Easements, 19 C. J., p. 867, n. 57.
Injunctions, 32 C. J., p. 215, n. 91.
Building, 9 C. J., p. 687, n. 99.
Municipal Corporations, 43 C. J., p. 153, n. 19, p. 154, n. 21, 23.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

This is a suit in equity; the prayer seeks a decree requiring the defendants to remove the structure upon lot 35 block 20, Ladd's Addition to Portland, Oregon. No question of pleading is involved. The facts are: forming a part of the City of Portland is a subdivision entitled Ladd's Addition. It lies between Hawthorne Avenue on the north and Division Street on the south; between 12th Street on the west and 20th Street on the east. It was evidently the intention of the dedicator, Mr. W. S. Ladd, that this subdivision should be a residential section. The

---

14. Waiver by acquiescence in violation of building restrictions, see notes in 1 Ann. Cas. 603; 14 Ann. Cas. 760; Ann. Cas. 1915B, 147.

streets and five small parks were designed in a manner peculiarly adapted to residential purposes. Traversing the property from the southeast corner to the northwest corner and from the southwest corner to the northeast corner are two avenues, the one is entitled Ladd Avenue; the other Elliott Avenue. At the point where the two would cross one another is one of these small park areas entitled "Central Park." Coming into this central area are East 16th Street and Harrison Street; other minor streets, including Hazel Street, constitute the street area of the plat. On October 26, 1891, when W. S. Ladd was the owner of this tract of land, he caused it to be surveyed, laid out in blocks, lots, avenues, streets, alleys and parks and then filed a plat of the same, showing the foregoing, in the proper public office. Accompanying the plat were articles of dedication executed by Mr. Ladd and his wife. A paragraph of these articles of dedication is the following:

"The blue lines drawn on said map within the limits of said blocks at the distance of twenty feet from and parallel to the adjacent boundary lines of the avenues laid out thereon and the like lines drawn on said map within the said limits at the distance of fifteen feet from and parallel to the adjacent boundary lines of the streets laid out thereon shall be known and designated as 'building lines.' "

The blue lines appear upon the plat. On October 6, 1893, Mr. Ladd died. Before his death he had not sold any of the lots. June 14, 1895, Mr. Ladd's heirs joined in a conveyance of six of the lots to the Old Ladies' Home; it described the property conveyed as "all of lots one (1), two (2), three (3), four (4), five (5) and six (6) in block twenty-one (21) of Ladd's Addition to the city of

\* \* .'' Some time after the death of W. S. Ladd the title was put in the name of Charles E. Ladd, a son of W. S. Ladd, and remained in the name of this son until the formation of a corporation, The Ladd Estate Company. In addition to the six lots conveyed to the Old Ladies' Home, twenty-five others were disposed of before the Ladd Estate Company was organized. The deeds of conveyance described the property conveyed by lot and block number, and covenanted that the property conveyed was free from all encumbrances, and that the grantors shall warrant and forever defend the conveyance against the claims of all persons whomsoever. These deeds made no reference to the blue lines. The agent who negotiated these sales on behalf of the heirs testified he displayed to the buyers copies of the original plat showing the blue lines, and that the lots were sold with reference thereto. His testimony was not contradicted. May 14, 1908, all of the heirs joined in a conveyance of all the remaining lots to the Ladd Estate Company. This deed described the property by lots and blocks, "all in Ladd's Addition to the City of Portland," it made no reference to the blue lines.

There are several plaintiffs in this suit; two of them own property, the title of which was never in the Ladd Estate Company; that is, their title through mesne conveyances came from the Old Ladies' Home, which as we have seen obtained title from the heirs.

When the Ladd Estate Company was organized by the heirs to handle their property interests, there were seven or eight houses in the entire subdivision. This company proceeded with an active selling campaign. It prepared and printed plats of the subdivision showing the streets, avenues, park areas and

other physical features, but the plats did not show the blue lines. Most of the deeds executed by the Ladd Estate Company contained what we shall refer to as building restrictions. These restrictions stated that during the period from the date of the conveyance and ending May 1, 1917, certain lines of activity should not be engaged in upon the premises, and that certain types of building, as for instance, livery-stables, laundries, etc., and houses costing less than $2,500 should not be erected, and that no building should be erected nearer to the street line than a certain number of feet; those building lines were never less than the blue lines, and in most instances were the same. These restrictions recited that they were made solely for the company and all except thirty-one of the deeds contained a clause stating that nothing contained in it should abridge the rights of the company to dispose of or convey any other lot or lots absolutely and without condition, or upon any conditions that the company might desire. At the time this suit was instituted, 710 lots had been sold. In 1917 these so-called building restrictions had expired, and from that time on the deeds from the company were general warranty deeds, with covenants that the title was free from all encumbrances. The realty brokers who sold lots after the corporation acquired ownership, testified that no plans showing blue lines were used by them. However, the evidence shows that every buyer was presented with an abstract of title, and that in the abstract was inserted a copy of the original plat showing the blue lines. It is evident from the testimony of these brokers that they gave to the blue lines practically no consideration, but used as one of the attractive features in the sale of lots, the

building restriction. Since 1917, that is, after the
building restrictions had expired, approximately 35
per cent of the lots were sold. There are 376 struc-
tures in the addition. One hundred and four of these
are too close to the street line if the blue lines are
given effect. Most of these structures, which are not
in harmony with the blue lines, were constructed
since 1917. But most of these 104 stand upon lots
of irregular shape, and only a corner of the building
or a minor projection violates the blue line. That
part of Elliott Avenue in the vicinity where defend-
ants built their house, conforms with the blue lines.
The lot involved in this suit was conveyed to the
defendants March 18, 1924. The deed described it
as a portion of "lot numbered thirty-five (35) of
block numbered twenty (20) in Ladd's Addition."
It is a general warranty deed covenanting that the
title is free from all encumbrances. Defendants'
grantors were not the Ladd Estate Company. There
is evidence that before the defendants commenced the
construction of their building a discussion was had with
some of the plaintiffs in which the plaintiffs insisted
that the defendants should conform to the general
building line. After construction of the building had
begun, and approximately $4,100 had been expended
as part payment of the lot and cost of construction,
some of the plaintiffs notified the defendants ex-
pressly in writing of the existence of the blue line.
The building, a duplex dwelling-house, has now been
completed; a $6,000 mortgage is secured by the prem-
ises. It stands within nine feet of Elliott Avenue
and three feet of Hazel Street. The houses built
prior to 1917 conform quite faithfully to the building
line. The evidence shows that following 1919 specu-

lative builders entered the district and most of the alleged violations occur in their structures and upon odd shaped lots, and upon the edges of the district. All of the plaintiffs, and some other property owners in the subdivision, testified that the harmonious appearance created by the general conformity to the building line influenced them in making their purchases; but their actual knowledge of the blue lines was either vague or doubtful. The defenses were denial of the blue line; a general disregard of it; a change of the general restrictions concerning the use of the property out of harmony with the blue lines; laches, and that plaintiffs cannot maintain this suit. The decree of the lower court was for the defendants; the plaintiffs appeal.

REVERSED.    COSTS TAXED.    REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Frank H. Reeves.*

For respondent there was a brief over the names of *Messrs. Winter & Maguire, Mr. Johnston Wilson, Messrs. Cake & Cake* and *Mr. L. E. Liljeqvist,* with an oral argument by *Mr. J. P. Winter.*

ROSSMAN, J.—The design of Ladd's Addition indicates clearly that the dedicator intended it should be a residential area,—in fact, a beautiful subdivision of the City of Portland. In addition to the central park, he provided four others; all five are small, but nevertheless they are so placed and the streets so laid out that the majority of the lots front either on the parks, or have a view of shrubbery in the parks. To this subdivision and to its principal avenue Mr. Ladd gave his name. Having arranged the streets and the

parks in a unique and beautiful manner, he put upon each lot a building line and accompanied the filing of the plat with a dedicatory document in which he referred clearly to those blue lines, and stated, "they shall be known and designated as building lines." While there is no evidence showing when the streets were graded and the pavements laid, we assume we are well justified in presuming that these followed the filing of the plat and the dedicatory instrument. The defendants do not question that the plat was adhered to in all respects when this work was done. Approximately two years after the plat and the dedicatory document were filed in the public offices, Mr. Ladd died. Thereafter some lots were sold by his heirs and each purchaser was presented with an abstract of title containing a copy of the original plat and dedicatory document. Thirty-one lots were disposed of while the title was in the heirs; five of these were conveyed to the Old Ladies' Home. We are not informed whether or not this was a sale, but the disposition of the other twenty-six lots was by the process of sale. Mr. T. C. Powell, the agent who made these sales, testified as follows:

"The Court: Let me understand you. Did you sell these lots with reference to this recorded plat, the original plat of Ladd's Addition? A. Yes, sir. We had copies of that plat made, that we used in selling.

"The Court: You sold with reference to them? A. Yes, sir.

"The Court: Aiming to sell with reference to the original plat as recorded? A. Yes, sir."

We have many times passed upon the legal effect which ensues when one making a sale of a lot displays a plat or map which shows streets or parks. One of the earliest of our cases is *Carter* v. *Portland,* 4 Or.

339, in which Mr. Justice McARTHUR, after an extensive review of the authorities said in behalf of the court:

"We are of the opinion that if one owning land, or having an equitable interest therein, and subsequently acquires the title thereto lays out thereon a town, and makes and exhibits a plan thereof with spare ground marked as streets, alleys, public squares or parks, and sells lots with clear reference to that plan or map, the purchasers of the lots acquire as appurtenant thereto every easement, privilege and advantage which the plan or map represents as part of the town. * * The purchase of lots and improvement of streets, with reference to the Brady map or plat, were acts of acceptance of the streets and other public places, and indeed of the entire plan of the city as displayed upon the map. The fact that the city had not, before the alleged purchase by plaintiffs, used and improved the parcels of land in controversy cannot redound to the advantage of the plaintiffs. It was not necessary that these particular pieces or parcels of land should have been improved or used prior to said alleged purchase in order to entitle the city to hold them. They were shown by the map adopted by Coffin, and by the city, to be public parks, and numerous and valuable private and public improvements were made with reference thereto, and thereby the dedication became irrevocable. As regards the improvement and use of public parks or squares, in like situation, it is sufficient if they are put to the use to which they are dedicated when the public convenience requires. In *Rowan's Exrs.* v. *Portland*, above cited, a case somewhat analogous to the one under consideration, the Court says that: 'The dedication having been made and proved by the map, and the sales and conveyance of lots with reference to it, did not require a subsequent user to establish or prove it, and we are not sure that it could have been defeated or lost by non-user even for twenty years, except so far as it was ousted by an adverse use for

that period.   To say that a dedication to the use of the future town and of the public, made when the site of the town was in a state of nature, would be lost if not followed by immediate and continued use, or should be limited to the extent to which it was thus used, would deprive the dedication of its intended value and would make it a mockery.'   The local authorities or the corporate guardians are the ones whose duty it is to improve, adorn and embellish the public parks, and where the dedication is irrevocable, as we hold it to have long since become in this case, they are the judges as to the time when the public health and public pleasure demand the use. and enjoyment of the lands dedicated.   The original owner, though he has the naked fee, has no right whatever to interfere with the premises except where the use becomes absolutely impossible, or where the corporate authorities seek to put the premises to some other use than that to which they were originally dedicated. * * It was urged by plaintiffs' counsel that a dedication could not be predicated by the use of the Brady map by Coffin, for that the same was not of record.   It is unnecessary to discuss this proposition at length, for it must be obvious, from the views already expressed, that to support a dedication of streets, alleys, public parks, etc., it is not necessary to show that the map upon which such streets, alleys, public parks, etc., were displayed, was recorded, but simply that it was used and referred to by the proprietor in selling the lots and blocks to which the streets, alleys, public parks, etc., are appurtenant."

And in *Steel* v. *Portland,* 23 Or. 176 (31 Pac. 479), Mr. Justice BEAN, speaking for the court, said:

" * * It has repeatedly been held by this court, and the law is well settled, that where the owner of land lays out and establishes a town and makes and exhibits a map or plan thereof, with lots, blocks, and streets marked thereon, and sells and conveys lots by reference to such plan or map, he thereby dedicates to the public the streets and public places thereon;

125 Or.—11

and if upon such plan he has designated a space or block as a public park, such space or block is as fully dedicated to public use as are the streets delineated thereon. The sale and conveyance of lots according to such plan or map implies a covenant that the streets and other public places designated shall never be appropriated by the owner to a use inconsistent with that represented by the map upon the faith of which the lots are sold: *Carter* v. *City of Portland,* 4 Or. 339; *Meier* v. *Portland Cable Ry. Co.,* 16 Or. 500 (19 Pac. 610, 1 L. R. A. 856); *Hogue* v. *City of Albina,* 20 Or. 182 (25 Pac. 386, 10 L. R. A. 673). There is no difference in the principles applicable to the dedication of public streets and public squares or parks; in each case the dedication is to be considered with reference to the use to which the property may be applied or the purpose for which the dedication is made, and this may be ascertained by the designation which the owner gives to land upon the map or plat, whether he calls it a street, square, or park. It is of no consequence whether the map or plan in this case was properly executed or not if the land in question is sufficiently designated thereon as a public park, as we think it is, for the sale and conveyance by Holladay's direction of lots and blocks by reference to such plan operated as an irrevocable dedication of the land to the public for use as a park."

A large number of cases have been before this court in which the same principles of law have been enunciated and applied without deviation; we deem it unnecessary to cite once more these authorities.

But the defendants contend that the acts of Mr. Ladd were not sufficient to create a restrictive covenant; they rely on *McCloskey* v. *Kirk,* 243 Pa. 319 (90 Atl. 73), and *Zinn* v. *Sidler,* 268 Mo. 680 (187 S. W. 1172, L. R. A. 1917A, 455). In the former of these cases the dedicator drew upon the plat a dotted line, and above it wrote the words, "15 feet

building line." Apparently the instrument of dedication made no reference to the line. The court held this insufficient to create a restrictive covenant; the court evidently felt that this single act upon the part of the dedicator was insufficient to evidence an intent upon his part to create a covenant, and thus it said:

" * * Unless it affirmatively appeared that the original owners of this land created this building restriction with the effect of a covenant, and that the dotted line was the complete evidence thereof, and that it authorized its incorporation as a covenant in the acknowledgment in the plan, it meant nothing."

In *Zinn* v. *Sidler* the dedicator drew upon the plat a line twenty feet from and parallel to the street line; this he designated with the words "building lines," no reference to the line appeared anywhere else. The court found that the dedicator may have intended the line to serve no purpose other than as a suggestion to owners of property within the district. In holding it ineffective as a covenant the court said: "So far as our investigation has led us, a mere designated line drawn upon a map or plat of property without more, will not suffice to create a covenant." Arriving at the contrary conclusion we have *Simpson* v. *Mikkelsen,* 196 Ill. 575 (63 N. E. 1036), in which the dedicator set apart a strip two hundred and fifty feet wide through her property and entitled it Humboldt Boulevard; running parallel with this strip she drew upon the plat a dotted line, writing over it, "building line 50 feet North from the boulevard line." The court held this sufficient to create a restrictive covenant, saying:

"There can be no question, from an examination of the plat, that the purpose of this language and the

broken line was to reserve a space 50 feet in width off the front end of the lots abutting upon Humboldt boulevard, upon which no buildings were to be erected. The term 'building line' is not of doubtful or obscure meaning, but is a well-understood term when used upon town or city plats. The reservation is an easement for the benefit of the public, and especially all the property abutting upon the street in this subdivision. The space between the building and the street belongs absolutely to the owner of the lot, subject to this easement, and the owners of this and the other lots in the subdivision are guaranteed whatever benefits may result from an unobstructed view across the entire reservation."

The Massachusetts court in *Oliver* v. *Kolick,* 223 Mass. 252 (111 N. E. 879), had before it a situation somewhat similar; its conclusions lend strength to the authority of the Illinois decision.

1. When we come to arrive at our conclusion in regard to this situation we find that Section 9849, Or. L., provides that no covenant shall be implied in any conveyance of real property; hence, unless what the dedicator said and did, amounts to a covenant, none can be found. Let us consider his language: certainly he did not intend to incorporate into his dedicatory instrument a mere suggestion to future builders of homes in Ladd's Subdivision. A better conclusion can be reached as to his meaning when we consider his words in connection with the five small parks. His dedication of the property area composing these parks was expressed in these words: "Upon the express condition that the said tracts shall not be cut, crossed or bisected by any way or right of ways for any street railway * * and in case any such tracts shall at any time in the future be cut, crossed or bisected by any such way or right of way, then in such

case the whole of such tract or tracts so cut, crossed or bisected shall revert to the said William S. Ladd, his heirs or assigns * * ." Thus he was using the dedicatory acknowledgment as a repository for a condition subsequent which upon occurrence would defeat the dedication. This, we believe, lends color to the claim that his words concerning the building lines were words of covenant. But they also show still further his plan to make Ladd's Addition into a very desirable place for homes. Having made such abundant provisions for seclusion from street-cars, and provided attractive surroundings by way of park areas and well arranged streets, we believe that he intended his words in regard to building lines should be understood as words of covenant, and so held.

2. The next problem is, may these plaintiffs maintain the suit? All of them are home owners in the immediate vicinity of the lot upon which the defendants constructed their building. The homes of several are upon Elliott Avenue, near Hazel Street. Defendants contend that if any easement was created, it was appurtenant and not in gross; they cite *Houston* v. *Zahm,* 44 Or. 610 (76 Pac. 641), where Mr. Justice WOLVERTON, speaking for the court said:

"As a rule of construction in determining whether in a given case an easement is appurtenant or in gross, courts favor the former, and, if the right in controversy is in its nature an appropriate and useful adjunct to the land conveyed, having in view the intention of the grantee as to its use, there being nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant, and not in gross, the presumption therefore being in favor of the former where there is a doubt as to the real nature of the grant."

From our findings as to the facts expressed above, it necessarily follows that we hold the easement was in gross. We have been much impressed with the conclusions announced by Dean HARLAN F. STONE, now a Justice of the federal Supreme Court, as expressed in 19 Columbia Law Review, 177:

"In this country a number of courts have reached the conclusion that, in the case of a building plan where a covenantor has subdivided the plot held by him subject to the restrictions, the sub-grantees may enforce the covenant against each other respectively although there is no express renewal of the covenant in the deed. This somewhat startling result really rests on the true interpretation of the covenant when it is the basis of the building plan. If the real meaning of such a covenant is that the restriction is intended to be imposed on every part of the land embraced in the plan for the benefit of every other part of the land in whosoever hands it may come, the original grantor who has offered the land subject to the plan may on principles already considered be deemed impliedly to have reserved the covenant for the benefit of all those who may thereafter acquire an interest in any part of the land embraced in the plan. He would then become trustee of the covenant for all subsequent purchasers and each purchaser as he acquired an interest in any part of the restricted property would become entitled to the benefit of the covenant as *cestui que trust.* In *Schrieber* v. *Creed* [10 Sim. 33, 40], SHADWELL, V. C., suggested that the plaintiff in order to enforce restrictions must be either an assignee or a *cestui que trust.*

"This view has received the support of judicial opinion in some other cases. As a matter of procedure, the original covenantee need not be joined as a party in a suit brought by one grantee against another, but in other respects the notion that the original covenantee under a building plan is a trustee of the restrictive covenant for all subsequent grantees

including the grantee of a subdivision of a single plot, conforms to recognized legal doctrine and effectuates the intention of the parties.''

Our practice is in harmony with this rule.

We believe that the plaintiffs are therefore in a position to maintain this suit.

3-5. It is argued that after the death of Mr. Ladd the heirs, the corporation, or both, modified the plan concerning the use of the property in such a way as to abandon the blue lines and substitute a new plan whereby building restrictions having a duration for only ten years and requiring a certain set-back from the property line were substituted for the old plan. This could not be done without the consent or acquiescence of the owners of the lots previously sold. Upon this subject the defendants have the burden of proof. The testimony of Mr. T. C. Powell previously quoted, shows that as long as the title remained in the heirs the plan inaugurated by W. S. Ladd was adhered to. When the corporation was formed and deeds were executed by it containing the building restrictions no new plat was filed in lieu of the old one containing the blue lines; the instrument of dedication was not modified and the abstracts of title continued to contain copies of the original plat. No official of the company testified that the company intended to eliminate the blue line; no one who had purchased any of the original thirty-one lots was shown to have acquiesced in an elimination of the blue lines. One of the officials of the company testified that as 1917 approached he began to wonder what would be the effect of the blue lines. There is, of course, evidence which is not in harmony with the blue lines, as for instance the clause containing the

building restrictions expired at the end of ten years and the deeds of conveyance were a general warranty, but we do not believe that this evidence overcomes the force of that in favor of the blue lines.

We do not believe that the plaintiffs failed to act promptly; far from acquiescing in the defendants' acts they protested not only early, but made it quite clear before the defendants commenced construction that the plaintiffs were opposed to any building which could violate the established building line.

6. Having arrived at the foregoing conclusion, it is apparent that the plaintiffs are entitled to relief. We are aware of the fact that when the defendants are compelled to move their building within the blue lines they will sustain a considerable loss. But one who enters a residential district which the owners have embellished and made attractive through the expenditure of money and labor and puts his building within a few feet of the sidewalk line of one of the main thoroughfares, knowing as he must, and as he was positively told that his building in that place was unwelcome, should not be heard to complain of the expense of righting his wrong. The builders in this case found a beautiful subdivision of homes, wide park areas, and a cluster of five parks; by despoiling it through a violation of its established building lines they saw a profit. Had all others built within three feet of the sidewalk line these builders would not have entered, it would have been unattractive to them. It was only by taking to themselves a license possessed by no one else and displaying an utter disregard of the rights of all others that they expected to make a profit. But the rights of these others rest upon a covenant which the defendants cannot violate with

impunity. The plaintiffs may have a decree requiring the defendant Evans to remove his building so that it shall not be nearer than twenty feet to Elliott Avenue, and not nearer than fifteen feet to Hazel Street; the removal to be completed within four months from the entry of the mandate. Plaintiffs may have their costs here and below. Decree reversed.

REVERSED. COSTS TAXED. REHEARING DENIED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.

---

Rehearing denied April 10, 1928.

ON PETITION FOR REHEARING.

(266 Pac. 891.)

ROSSMAN, J.—The petition for a rehearing is accompanied with a brief on behalf of the defendants which present an extensive review of the principles of law applicable to the facts of this case. Counsel for the Ladd Estate Company, appearing *amicus curiae,* has presented the court with a brief which also analyzes the law appertaining to dedications and the creation and operation of various restrictions. The consideration thus given to this case by counsel, and the importance of this matter, leads us to believe that a further presentation of our views may be of some service.

Let us first consider some of the provisions of our Code applicable to dedications of streets, parks and other public places. As we proceed it will be well to bear in mind the difference in the principles of law applicable to a statutory dedication as distin-

guished from a common-law dedication. The former operates by way of grant; the latter depends largely upon the principles of estoppel for its efficacy.

The framers of our Code attached such importance to plats that in 1864 they enacted into law what is now Section 3807, Or. L., making it a penal offense for "any person or persons, who shall dispose of or offer for sale * * any lot or lots in any town or addition to any town or city * * which has been or shall be hereafter laid out, until the plat thereof has been duly acknowledged and recorded in the recorder's office. * * " Section 3809 of the Code provides:

"Every donation or grant to the public, including streets and alleys, or to any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on the plat of the town wherein such donation or grant may have been made, shall be considered to all intents and purposes as a general warranty to the said donee or donees, grantee or grantees, for his, her, or their use for the purposes intended by the donor or donors, grantor or grantors, as aforesaid."

Section 3824, Or. L., provides:

"In cases where any person interested in any corporated town in this state, the corporate functions of which shall be in active operation, may desire to vacate any street, alley, or common, or part thereof, it shall be lawful for such person to petition the common council or other body in like manner as persons interested in towns not incorporated are authorized to petition the county court; and the same proceeding shall be had thereon before such common council or other corporate body having jurisdiction as authorized to be had before the county court, and such common council or other corporate body may determine on such application, under the same restrictions and

limitations as are contained in the foregoing provisions of this act."

Section 3826 provides:

"In all cases where two or more persons have laid out or shall hereafter lay out a town, or lands contiguous and adjoining to each other, and such town does not improve, either of the individuals holding all the legal rights, title, and interest in all the lots laid off by such party and attached may have the same vacated as in case of a lot, street, or alley on application of the party laying out such addition or part of said town, or on the application of such person as may acquire or derive the legal title to the land and lots in such addition; and in no case shall persons purchasing lots in other additions of said town be capable of making any valid objection to said vacation if such vacation does not obstruct any public road or highway laid out and established by law."

Section 3827 provides:

"If any person shall lay off an addition to any town, which does not improve, and shall be the legal owner of all the lots contained in such addition, such person, or any other person who shall become the legal owner thereof, may have such addition or any part thereof vacated in like manner as provided in the last preceding section."

Section 3828 provides:

"Whenever the county court or city council shall refuse the application of any person or persons made as provided in this chapter for the vacation of any part of any town or city, such person or persons may appeal from such order refusing such application to the circuit court of the county where such town or city is situated."

These legislative enactments became the law of this state with the session of 1864; they constitute a com-

plete method for the filing of plats, the dedication of streets, alleys and public places, and the vacation of the public places shown on the plat. In 1909 the legislature amplified the foregoing by requiring that the plat shall show the initial point of the survey; that the affidavit of the surveyor shall be attached to the plat; that all plats offered for recording shall be filed in a plat book, and that whenever a plat or any portion is vacated the proper notation shall be made upon it. The 1913 and 1919 legislative assemblies further amplified some of these provisions. Thus in 1891, when W. S. Ladd filed the plat of Ladd's Addition, the law had made provision for filing the plat, and also for vacating any public places shown on the plat, should that seem desirable. The amplified features of these acts came into operation in 1909 when the sale of the lots began to become active, and this is the period of time when the defendants say the blue lines were eliminated by the act of the purchasers in accepting deeds which contained building restrictions and warranties against all other encumbrances.

It is conceded by all that the dedication was accepted. The streets were improved, the park areas were adorned with shrubbery, and, though the evidence is silent, we believe that the record warrants the assumption that even the alley-ways have been accepted by the public. The general acceptance of the easement for light, air and vision, afforded by the building lines, is alone in dispute. Not only do the defendants dispute the acceptance of this convenience, but they deny that the dedicator intended to offer such an easement; they say that he had taken a step in that direction, but had not taken the final one.

Let us once more address ourselves to the task of ascertaining Mr. Ladd's intention. Our original de-

cision quotes the words of the platter as found in the acknowledgment. In approaching this problem, it may be worthy of notice that a man of Mr. Ladd's prudence and business acumen would not be likely to incorporate into the plat and acknowledgment, the building line feature unless he intended that some present significance should be attached to it. The plat bears to the subdivision somewhat the same relationship that a charter does to a city; that is, it sometimes becomes the repository of all those basic features which are common to the whole. Hence, one is likely to deliberate carefully before incorporating something of a public significance into a plat which will affect his entire tract of land. We thus have a man of unusual business ability who places a building line upon his property, and makes express reference to it in his acknowledgment to the plat; both are filed in the public records; a copy is kept in the dedicator's office; two years pass and then the platter dies; this is followed with the passage of a few years more in which many lots are sold with reference to the plat which showed the blue lines. In the meantime, although the statutes of the state afforded a simple method for vacating portions of the streets, no action in that direction was taken. Still later several hundred lots were sold, and to each buyer was presented a copy of the plat showing the blue lines, as a portion of his abstract. Our problem is, what legal effect attaches itself to this situation? A canon of interpretation which may be of some assistance is thus stated in 8 R. C. L., Dedication, Section 20: "In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against him; but the plat should be con-

sidered as a whole, and the maker's real intention sought therefrom." In Corpus Juris, Dedication, Section 127, we find the rules of interpretation stated as follows:

"Plats by which dedications are made are to be interpreted by the court as any other writing would be, and are to be construed as a whole in order that the intention of the party may be ascertained; and every part of the instrument be given effect; no part of the plats are to be rejected as meaningless, if it can be avoided; and lines as well as words are to be considered. All doubts as to the meaning of the plat and any conflict on its face will be construed most strongly against the dedicator. Reservations in a plat dedicating land will not be extended by construction. The court is not authorized to add a line to the plat which was not placed there when the original survey was made, nor to take any such from it unless perhaps where there is a conflict in the boundaries or in some cases where the plat is shown not to be in accord with the original survey." 18 C. J., § 127.

Elliott on Roads and Streets, Section 130, states:

"Dedications by maps and plats are sometimes so made as to render it difficult to determine their nature and extent. We think it a safe general rule to resolve doubts in such case against the donor, and, within reasonable limits, to construe the dedication, so as to benefit the public rather than the donor."

Our problem now is to ascertain what Mr. Ladd meant when he drew upon the plat in blue lines, and in the acknowledgment referred to them as "building lines." The term "building line" is not a novelty in the law, as will be seen by reference to 9 C. J. 687. See, also, *City of St. Louis* v. *Handlan*, 242 Mo. 88 (145 S. W. 421). We shall also refer to many cases in which the term was before the court.

Apparently in the city of Chicago, the drawing of building lines upon a plat of a subdivision is a common practice. The courts of Illinois have held that the public has an interest in the easement thus created, as will be seen from the cases which we shall review. This seems to follow as a logical conclusion. The public has an interest in the streets, alleys and parks. The building line is created, in part at least, to add beauty and symmetry to the street. In the subdivision now before us the building line when generally observed would be likely to add attractiveness to the five park areas. If the adjoining property owner is benefited by an easement which affords him better light, air and vision, it is difficult to understand why the man in the street is not similarly benefited by the same easement. Likewise it occurs not infrequently in the progress of our American municipalities, that our streets are found too narrow to carry the traffic; hence, set-back lines are sometimes established, so that the street may be eventually widened at a lesser expense. When, therefore, a plat is filed showing a building line, shall we say that the adjoining property owner alone is interested? Shall we say that the offer to create an easement is made to him alone? And when at public expense, municipal improvements are made, and the park areas are improved, shall we say that the public has accepted the offer only so far as it applies to the actual street area, but has not concerned itself with the adjoining easement? We have searched the authorities with some degree of diligence, and have failed to find any case, which having considered this matter, holds that the public has no interest, where the set-back line is established for more than a course of a few years.

In *Simpson* v. *Mikkleson,* 196 Ill. 575 (63 N. E. 1036), there appeared upon the plat some dotted lines parallel with the lines of a boulevard. Along these dotted lines appeared the words "building line 50 feet North from boulevard lines." In interpreting the effect and proper significance of this dotted line, the court said:

"The term building line is not of doubtful or obscure meaning, but is a well understood term when used upon town or city plats. The reservation is an easement for the benefit of the public, and especially all the property abutting upon the street in this subdivision * * The persons to be benefited by such a reservation are understood and need not be expressly mentioned or set forth, any more than it is necessary to explain or set forth the persons to be benefited by a street or alley * * As we have seen, the building line being clearly designated upon the plat, and this reservation or easement being for the benefit of the public generally, including the adjoining owners, when the dedication of the boulevard was accepted by the public, the building restriction appurtenant thereto was also accepted."

The court held that the plaintiffs, owners of property along the boulevard, could enforce it against the defendants, who proposed to violate the line.

In *O'Gallagher* v. *Lockhart,* 263 Ill. 489 (105 N. E. 295, 52 L. R. A. (N. S.) 1044), the court said:

" * * One purpose in establishing a building line is to insure a certain degree of uniformity in the appearance of the buildings erected on the property where such line has been established. The establishment of a building line also creates an easement of unobstructed light, air and vision for the benefit of the public and for the benefit of the owners upon whose property the restricted area is laid out."

In *McGovern* v. *Brown,* 317 Ill. 73 (147 N. E. 664), the court said: ''The establishment of a building line also creates an easement of unobstructed light, air and vision for the benefit of the public and of the owners whose property is included in the restricted area.'' In *Townsend et al., Appeal from Board of Street Commissioners,* 68 Conn. 358 (36 Atl. 815), the city was proceeding to establish a building line; the property of the respondents had been voluntarily subjected to a building line by the covenants of a previous owner expressed in a deed; the building line established by the city was between the line we have just mentioned and the property line. The board of street commissioners awarded respondents damages by reason of the city's establishment of the building line. On appeal it was held that they were entitled to none.

In *Oliver* v. *Kalick,* 223 Mass. 252 (111 N. E. 879), the court attached significance to the lines appearing upon a plat entitled building lines. Some of the lines were not designated with any words. The court, nevertheless, held that their purpose was apparent and enforced the easement created by them against the defendant who proposed to disregard the easement. From the foregoing we conclude that the term ''building line'' has a well-established legal significance, and that in the absence of qualifying words, the easement created by a building line shown upon a plat inures to the public as well as the adjoining property owner.

7, 8. Defendants argue that a purpose to dedicate such an easement is not expressly set forth in the dedicatory acknowledgment, while in regard to the streets, alley and park areas, such a purpose is

125 Or.—12

clearly set forth. This, we believe, is a matter of no great significance. The streets, avenues and parks quite naturally are dedicated solely to the public; whereas, the easements of light, air and vision, created by the building lines, as we have seen, inure to the individual as well as to the public. The dedicator would be more likely, therefore, to use words of dedication in connection with the former than with the latter.

We believe that a purpose to yield to the public and the adjoining property owner an easement for light, air, vision and similar conveniences is sufficiently expressed.

But the defendants in advancing their argument that a mere display of building lines upon a plat is insufficient to create any easement rely expressly upon *McCloskey* v. *Kirk*, 243 Pa. St. 319 (90 Atl. 73), and *Zinn* v. *Sidler*, 268 Mo. 680 (187 S. W. 1172, L. R. A. 1917A, 455). Before proceeding with an analysis of these cases, let us remind ourselves once more that a statutory dedication operates by way of grant. Since it so operates, one who seeks to enforce an easement by virtue of a statutory dedication need not point to words of covenant; his task is to reveal to the court words of grant. With this thought in mind, let us consider the Pennsylvania court's decision in *McCloskey* v. *Kirk;* it said:

" * * The words 'building line 15 ft.' of themselves are not conclusive; granted that the existence of this notation upon the plan indicates a restriction, what is the extent thereof as to time or as to character? The court is asked to construe the notation upon the plan as a solemn covenant running with the land for an indefinite period, and this as being within the intention of the parties at the time.

"The appearance of this dotted line on the plan without more, conceding that the plaintiffs knew of it before they received their deeds, coupled with the tender of deeds which made no reference to the line nor indicated it as a restriction, put them upon special inquiry; so important a matter as a restriction creating a covenant running with the land or as an easement irrevocable as to time demanded further information from those creating this limitation as to its meaning and scope. The source of information was the corporate act of the plaintiff's grantee, the South Park Land Company; unless it affirmatively appeared that the original owners of this land created this building restriction with the effect of a covenant and that the dotted line was the *complete evidence thereof* and that it *authorized its incorporation as a covenant* in the acknowledgment in the plan, it meant nothing."

Thus the court sought words of covenant; it found no language which it felt created a covenant; and, therefore, dismissed the plaintiffs. Apparently, it would have been satisfied had it found the words in the acknowledgment. It found the words in the resolution of the South Park Land Company, which was the platter; but this resolution limited the building line to a period of ten years. Almost all of this period had expired before the plaintiff brought his suit. The plaintiff was denied relief. Hence the line and the words, alone, were insufficient. But the line, and words, together with appropriate language in the acknowledgment, or in the resolution of the corporation would be sufficient. The case, apparently, is not much opposed to the views of the plaintiffs.

In *Zinn* v. *Sidler,* the court looked for words which would create a covenant, and finding none, refused to attach significance to the words "building lines" which appeared upon the plat. It is worthy of notice

in this case that at the time when the tract was created and the streets and other public places were set out, the land was not within the corporate limits of any city. By reverting to the court's search for words of covenant, we find in the decision:

"A covenant as to the restricted use of the property in question is necessary to sustain the plaintiff's contention; the creation of such a covenant may be by express words or by reasonable implication from words employed clearly indicative of such a purpose. * * A covenant, however, is not a necessary part of a plat, but is dependent for its creation on the will of the owner of the property subdivided. That will cannot, by reason of the very nature of a covenant, be declared by a designated line and nothing more. It must be expressed in words, either definitely defining the covenant or making apt reference to the designated line, thus giving formal expression to the covenantor's purpose."

In this case neither the acknowledgment to the plat nor any deed conveying the lots made reference to the building line. It will be observed that in both of the foregoing cases the court sought words of covenant, and finding none concluded that the lines upon the plat and the words appearing thereon; "building line" were insufficient to create an easement.

Our facts are more favorable to the creation of an easement than those before the Pennsylvania, Missouri and Illinois courts. The Pennsylvania court mentioned the absence of words of covenant in the acknowledgment; the Missouri court demanded "apt reference to the designated line, thus giving formal expression to the covenantor's purpose"; in our case we have a formal expression in the acknowledgment making express reference to the building line; we

also have a statute which states: "Every donation or grant to the public * * or to any individual or individuals * * marked or noted as such on the plat * * shall be considered to all intents and purposes as a general warranty * * for the purposes intended by the donor * * or grantor * * ." We have the additional fact that every purchaser of a lot was presented with an abstract of title containing a copy of this plat and acknowledgment. The plat was recorded, the streets were accepted by the public bodies; thus we have a statutory dedication, and under a statutory dedication the authorities agree that the dedication operates by way of grant. In Elliott, Roads and Streets (3 ed.), Section 125, we find:

"A distinguishing difference between a statutory and common law dedication is said to be that the former operates by way of a grant, and the latter by way of an estoppel *in pais* rather than by grant. In many of the states a valid statutory dedication operates to vest the fee in the city, or the county, as the case may be, and this has been held to dispense with acceptance on the part of the public. * * A statutory dedication operates as a conveyance of an easement, except where the statute declares that a fee shall pass, and is, in its essential characteristics, a grant of an interest in land, while a common law dedication generally operates by way of estoppel. The one concludes the owner upon compliance with the provisions of the statute under which it was made, while the other concludes him upon the ground that he has suffered the public and individuals to acquire rights upon the faith that he has devoted the land to the use of the public as a road or street."

We have held to the same effect: *McCoy* v. *Thompson*, 84 Or. 141 (164 Pac. 589).

We believe that the words of the acknowledgment, taken in connection with the blue lines of the plat and

the fact that the dedicator was creating a high-class residential district, makes it quite clear that he was creating an easement for light, air and vision.

9. We have seen that building lines create an easement for the public, as well as the adjoining property owner. A plat may become the means of creating various public easements. Thus in the well-considered case of *Rowan's Exrs.* v. *Town of Portland,* 8 B. Mon. (Ky.) 232, we find:

"The efficacy of a dedication to public use, arising from the clear indications of the map or plan of a town by which lots have been sold and conveyed, is so well established by the adjudications of the highest tribunals in our own and other countries, and flows so directly from the principles of honesty and good faith, which must be applied to the transactions and the rights of individuals, and is so absolutely essential to preserve from oppression and outrage, privileges well understood, fully paid for, and necessary to the reasonable enjoyment of that which is expressly granted, that it cannot be shaken by any metaphysical inquiry into the capacity of the public at large to take the benefit of such dedication as a grantee.

"The argument of the learned Judge, would seem to confine the right of the public at large to acquire easements over the lands of individuals to the case of a public highway. But it appears from the references in his opinion, that besides the numerous cases recognizing and establishing the right of public use in streets and commons, and public squares in towns, and in squares dedicated to religious or charitable purposes; the reservation of a spring of water for public use is recognized in *McConnell* v. *Lexington* (12 Wheat. 522), [6 L. Ed. 735], a customary watering place in the inhabitants of Southwark, is recognized in Coke Litt. 56, a., a grant of the right of use of a landing place to the proprietors of a fishery was held to be presumable, from twenty years use and

improvement and repair of the place for landing nets: (2 Brod. & Bing., 667; 5 Cowan's Rep. 311:) and in *Botts* v. *Stennett* (8 Term. Rep. 606,) a query for the landing of goods was likened to a way, and was held to be pleadable in trespass as public and open." See, also, for an extended list, 18 C. J., Dedication, p. 46.

10, 11. The defendants contend that when deeds were issued to the various purchasers of lots in which no reference was made to the blue lines, the building line was thus extinguished; especially do they urge us to conclude that the incorporation into many of the deeds of the building restriction followed by a warranty that the title was free from all other encumbrances, constituted an abandonment or rescission by the acts of all of the building line. We have previously referred to the fact that the legislative enactment defines the method of vacating all, or a part, of a public place appearing upon a plat. We shall later again refer to this matter. But, if it is possible to vacate a plat, or a part of one, by mutual consent, let us determine whether it was done in this case.

It does not seem to be essential that building lines, to be enforceable, should appear in all of the deeds. Thus it is said in *Castleman* v. *Avignome,* 12 Fed. (2 ed.) 326, 56 App. D. C. 253:

"And they have been enforced against a grantee with notice, even when his deed of conveyance does not recite the condition, or when some of the conveyances from the original holder fail to recite the same."

Similar expressions are found in many other cases.

It seems well settled that the deed and the plat are to be read together and many authorities hold that whatever appears upon the plat is to be con-

sidered as a part of the deed. Thus it is said in *Smith* v. *Young,* 160 Ill. 163 (43 N. E. 486):

"In each of the deeds in appellant's chain of title from Craig and Cornell, and in each of the deeds in appellee's chain of title from the same source, the property conveyed is described as being certain designated lots or parts of lots in Block 12 of Cornell, Hibbard and Sordman's Subdivision of Blocks 11 and 12 of Kimbark's Addition to Hyde Park. In *Henderson* v. *Hattorman,* 146 Ill. 555, we said: (p. 563) [34 N. E. 1141] 'Where a deed refers to a plat or subdivision, the particulars shown upon such plat or subdivision are as much a part of the deed as though they were recited in it' * *

"From the plat, which must be read into the deeds, we think there can be no question but that the space 10 feet wide on the West side of lot 11 was intended to be reserved as a private alley for the use of the several lots on either side of such alley."

In *Oliver* v. *Kalick, supra,* the deed from the platter to defendants' predecessor did not mention a building line along Chestnut Avenue, but it mentioned a building line along Central Avenue. The plat carried a line along both thoroughfares, but only the line along Chestnut Avenue was entitled building line. The defendants contended that under these circumstances his lot was freed from the easement along its Chestnut Avenue side. The court in holding otherwise said:

"As was said by the court in *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4, at page 10, [89 N. E. 24], 'The plan formed a part of the contract of sale, not only for the purpose of ascertaining the lot conveyed, but including the description of the appurtenant rights which were intended to attach. These particulars were incorporated by reference in each deed, as if they had been recited at length. * * We think it plain that when this tract was divided into building lots and

a building line was established creating uniform restrictions applying to all the lots, a general scheme was intended for the benefit of all grantees and that such restrictions may be enforced in equity by each grantee for himself against the others. * * The defendants also contend that as the deed from McCormack to Dunn under which they claim title does not expressly refer to any building restrictions on Chestnut Avenue, the reference to the plan is not sufficient to create it. We cannot agree with this contention. The deed and the plan are to be considered together and that construction will be adopted which seems to be in accord with the intention of the parties as thereby expressed."

In *Simpson* v. *Mikkelsen, supra,* the court said:

"Counsel also says that the reservation is in no wise referred to in any of the deeds made by Mrs. Farlin to her grantees. The conveyances under which defendants claim title recognizes the plat, and describes the property simply as 'lot number 22 in block 7, in Harriett Farlin's Subdivision,' etc. Where a deed refers to a plat or subdivision, the particular description shown upon such plat or subdivision are as much a part of the deed as though they were recited in it. * * Property owners are not relieved from the binding force of building restrictions merely because they are not expressly reserved in the conveyances to them."

In *Thompson* v. *Maloney,* 199 Ill. 276 (66 N. E. 236, 93 Am. St. Rep. 133), the court said:

"When deeds convey lots according to their description upon a plat, the plat and all the particulars thereon shown are to be regarded as composing a part of the deed as though fully recited and set forth therein."

The Washington Supreme Court has expressed itself to similar effect; thus in *Cook* v. *Hensler,* 57 Wash. 392 (107 Pac. 178), it said:

"Where a deed describes land as a lot laid out on and designated on a certain plat or survey, the plat becomes as much a part of the deed as if it were copied into it." See, also, *Kenyon* v. *Knipe,* 2 Wash. 394 (27 Pac. 227, 13 L. R. A. 142.)

In Devlin on Real Property, third edition, Section 1020, the rule is thus stated:

"A deed, for a description of the land conveyed, may refer to another deed or to a map, and the deed or map to which reference is thus made is considered as incorporated in the deed itself. * * Where a recorded plat shows the existence of a street or alley, and land is conveyed by reference to such plat, a street or alley is necessarily excluded from the deed. The grantee is charged with notice of the streets and alleys shown by the map. If the deed refers to a plat, containing upon its face that to which the expressions contained in the deed may be applied, the court will not reject the words of the deeds, if it can connect the deed and plat in construction. * * A deed containing a description, and referring to a map having lines drawn upon it, and marking the natural boundaries and the natural objects delineated upon its surface, should be considered as giving the true description of the land, as much as if the map were marked down in the deed. * * "

In Section 1311a, Devlin on Real Estate, third edition, we find:

" * * A purchaser by buying lots according to a subdivision becomes committed to the streets forming part of it, and whether they have been opened or not, he cannot be heard to dispute their existence. Where property has been platted by the owners, into lots and streets, and sold with reference to the plat, the owners are estopped as against their vendees from asserting that such streets are not public highways even though the city has not accepted them."

3 Washburn on Real Property, sixth edition, Section 2350, states the rule thus:

"Where lines are laid down upon a plan, and are referred to accordingly in a deed, they are to be regarded as giving the true description of the parcel, as much as if expressly recited in the deed itself, but only as concerns the land granted and its immediate vicinity. In this way, a line may be supplied which was omitted in the description contained in the deed. So a plan referred to in a deed, describing land as bounded by a way laid down upon a plan, may be used as evidence in fixing the locality of such way. Ancient maps and surveys are evidence to elucidate and ascertain boundaries and fix monuments. If a plan is referred to in a deed for description, and on it are laid down courses, distances, and other particulars, it is the same as if they were recited in the deed itself."

In 18 C. J., Deeds, Section 251, the editor states the rule thus:

"Where a map, plan, or survey of the premises conveyed is referred to in a deed, it is to be considered as a part of the latter instrument and construed in connection therewith; and the courses, distances, or other particulars which appear on such map, plan, or survey are as a general rule to be considered as the true description of the land conveyed. * * By referring to it in the deed the grantor thereby adopts it."

When we thus incorporate into the deeds the matter found in the plat and acknowledgment, we find nothing inconsistent. The plat, bearing the signature of Mr. W. S. Ladd, creates a perpetual building line. The deeds from the Estate Company create additional restrictions, but they are not inconsistent with those imposed by the platter. It is true that the building line created by the Estate Company is of only temporary duration, but in some instances it

required that the building should be set back a greater distance, and it was accompanied with limitations imposed upon the buyer in regard to the type and cost of any improvement he might place upon the lot. Hence, these additional restrictions might have been very attractive to a buyer who desired to locate his home in such a district.

12. Defendants argue, however, that when some of the purchasers from the Ladd Estate Company accepted deeds containing a stipulation that the Estate Company could "sell or otherwise dispose of and convey any other lot or lots or property in said Ladd's Addition absolutely, or without condition, or upon or subject to such terms and conditions as it or they shall desire," the building lines were thereby vacated or eliminated. We do not believe that this conclusion follows from the foregoing premise. Such evidence does not necessarily indicate that any buyer who participated in such a transaction believed that he was thereby vacating a part of a plat. The transaction amounted to nothing more than this: that the buyer was releasing the Ladd Estate Company from any liability in the event it should convey lots to some new buyer upon a basis different than his deed; that is, without incorporating into the deed mention of the general plan. But this does not prevent the original buyer from insisting that in fact there were blue lines upon the plat. We fail to find any inconsistency between the plat and later deeds which would warrant a finding that the plat was altered.

13. It is contended by the defendants that the building lines were altered by the recitals contained in the deeds; they rely especially upon *Loomis* v. *Collins*, 272 Ill. 221 (111 N. E. 999), and *Eckhart* v.

*Irons*, 128 Ill. 568 (20 N. E. 687). A reading of *Loomis* v. *Collins* will disclose that before any lots were sold in the subdivision, the owners erected twenty houses along Euclid Avenue, and another group of houses along Bennett Avenue; still later they built a large number along Constance Avenue. When the suit was filed, eighty-seven houses had been erected, but none along Jeffery Avenue, except the building under course of construction by the defendants. Of the eighty-seven houses, eighty-four disregarded the building line if a construction is placed upon that term which prohibits the type of porch the defendants were erecting; that is, the dwelling rooms of their building did not extend over the building line, but the porches attached to the main building projected over the line. Relief was denied to the plaintiffs. The court laid stress upon the fact that before any lots were sold to the public, the platters had already erected many houses with porches of the same type that the defendants were building; the court also held "the disregard of the building line on Jeffery Avenue, would not affect the light, air or vision of the lots fronting other avenues." The defendants, however, rely upon that portion of the decision wherein the court gave effect to the covenants of the deed which limited in their scope the application of the building lines. Each deed referred expressly to the building line shown upon the plat and restricted its application. The covenants were thus given effect over the building line. The same was true in *Eckhart* v. *Irons*, 128 Ill. 518 (20 N. E. 687); *American Unitarian Assn.* v. *Minot*, 185 Mass. 589 (71 N. E. 551). We shall not again review the evidence before us, but shall content ourselves with the

observation that in our case the deeds make no reference to the building line appearing on the plat. The other language of the deed warranting the condition of the title, we do not believe was ever intended to affect the blue line in which, as we have seen, the public had an interest.

14. Nor do we believe that the building line was abandoned; the review of two or three of the authorities may be helpful.

In *McCoy* v. *Thompson*, 84 Or. 141 (164 Pac. 589), this court in speaking of the dedication involved in that case, which operated by way of common-law principles, referred to the dedication after the sale of a single lot as being irrevocable. Language of similar import is found in *Nichols* v. *Title & Trust Co.*, 79 Or. 226 (154 Pac. 391, Ann. Cas. 1917A, 1149).

In *People ex rel. Hart* v. *Marin County*, 103 Cal. 223 (37 Pac. 203, 26 L. R. A. 659), the prison authorities of San Quentin penitentiary undertook to close a public road leading to the penitentiary, owing to the fact that it was resorted to by evil-minded persons who sought to facilitate the escape of prisoners. Since the dedication, the state had acquired all the land through which the the roadway passed; the prison authorities contended that they could therefore close the roadway. In denying them this privilege the court said:

"The Bay of San Francisco and the highway in question may each afford opportunities for evil-disposed persons to come within proximity to the prison for nefarious purposes; and the prison authorities had as much authority to interdict travel upon the one as the other; in other words, it can do neither. It follows that the judgment is supported by the findings."

In *Thompson* v. *Maloney, supra,* one by the name of Blair filed in the proper offices a plat to a ten-acre tract showing streets, alleys, etc. After a few lots had been sold, the tract was conveyed to another individual, not by reference to lots, blocks and the plat, but by metes and bounds. Finally it came into possession of one by the name of Pierpont, who undertook to replat it, thereby eliminating an alley-way. The plaintiffs' lot adjoined this alley. It was held, that the replatting of the property was invalid.

In the foregoing cases no statute governing the vacating of dedications of public places was mentioned by the court. In our case we have a statute which provides a means of vacating public places. The effect to be attached to such a method was before the North Dakota court in *Ramstad* v. *Carr,* 31 N. D. 504 (154 N. W. 95, L. R. A. 1916B, 1160). The court said:

"The recording of the plat and sale of lots by the owner with reference thereto was a grant by the owner to the public of the public places marked on the plat. This grant, it is true, was not binding upon, or effective against, the municipality until accepted by it; but the tender of conveyance on the part of the owner continued until withdrawn by the owner, or until it was rejected by the municipality. The statutes of the state fix not only the method in which a dedication may be effected by the filing of a plat, but they also prescribe the manner in and conditions under which the plat may be vacated and the dedication revoked. Comp. Laws, §§ 3950–3966. See also *Lamoure* v. *Lasell,* 26 N. D. 638 (145 N. W. 577).

"As the dedication was made by the statutory method of filing a plat and the sale of lots by the owner with reference thereto, it could be withdrawn only by a vacation of the plat under the statute.

*Kimball* v. *Chicago,* 253 Ill. 105 (97 N. E. 257, 259 [260].)    See, also, McQuillin, Mun. Corp., §§ 1562, 1592, and *Burroughs* v. *Cherokee,* 134 Iowa, 429 (109 N. W. 876).    In the case at bar the owners had made no attempt to withdraw the dedication by vacating the plat, or in any other manner.    The offer to dedicate remained in full force at the time of acceptance thereof by the municipal officers."

We have already quoted Section 3827, Or. L., which makes express provision for the vacation of a plat of an addition which does not improve.    Upon the death of Mr. Ladd, the heirs had an opportunity to vacate the blue lines in the manner provided by Section 3827 had they so desired.    Section 3824, Or. L., makes provision for vacating streets, avenues and public places in incorporated cities.    After some of the lots had been sold and the estate company was created, this section afforded a workable method of vacating the blue lines which enlarged the scope of the streets had the owners of the subdivision so desired.    In the absence of taking advantage of any of the methods for vacating the streets or portions of them by the means provided by law, we must conclude that the plat remained unchanged.    We have already observed that after the acts of 1864 took effect the legislative assembly of 1909 provided additional methods of vacating plats and streets.

We conclude that the filing of a plat followed by the act of the public authorities in taking charge of the avenues, streets, alleys and park areas, constituted an acceptance by the city of all the public places and easements, and that this acceptance included the easements for light, air, vision and similar conveniences created by the building lines; further that this easement has not been abandoned, nor vacated.    See

especially *Marsh* v. *Village of Fairbury*, 163 Ill. 401 (45 N. E. 236).

It follows that the plaintiffs are entitled to the decree previously allowed. In our previous decision we desire the term "easement in gross" to read "easement appurtenant." The defendants may have four months' time from the filing of the mandate to comply with the building line.

15. Since the foregoing was written we have received a brief prepared by Mr. Joseph Simon, *amicus curiae*. Mr. Simon is the owner of a lot in Ladd's Addition fronting on Hawthorne Avenue. Hawthorne Avenue is one of the principal thoroughfares on the east side of the City of Portland; it constitutes the northerly boundary of the Ladd's Addition. It was dedicated to the public prior to the filing of the plat of Ladd's Addition. We cannot undertake to determine in this suit the rights of those who are not before us. There is no evidence in the record concerning the general surroundings of Mr. Simon's lot. The evidence, however, points out clearly the neighborhood immediately surrounding defendant's lot. We find, as we stated in our previous decision, that it is equitable to force the defendants to comply with the blue lines. Decisions may be found in the reports holding that due to a change in the neighborhood from a residential to business character, or due to a general violation of the building lines, a court of equity would not enforce through its decree, rights which the plaintiff would otherwise be possessed of. The pleadings in the suit before us and the briefs of counsel do not contend that there has been a change in the subdivision from residential to other purposes, certainly not in the vicinity of plaintiff's and defend-

ant's properties. Hence, we do not care to deal with more than the matter in hand; that is the lot owned by this defendant.

Petition for rehearing denied.

REHEARING DENIED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.